**In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.**

**MDL No. 381.**

United States District Court,
E.D. New York.

Dec. 16, 1983.

David J. Dean, Dean, Falanga, Sinrod & Rose, Carle Place, N.Y., Stephen J. Schlegel, Schlegel & Trafelet, Ltd., Chicago, Ill., Thomas W. Henderson, Pittsburgh, Pa., Benton Musslewhite, Houston, Tex., for plaintiffs.

Leonard Rivkin, Rivkin, Leff, Sherman & Radler, Garden City, N.Y., Philip Pakula, Townley & Updike, Wendell B. Alcorn, Jr., Cadwalader Wickersham & Taft, William Krohley, Kelley, Drye & Warren, Thomas Beck, Arthur, Dry & Kalish, New York City, David R. Gross, Budd, Larner, Kent, Gross, Picillo & Rosenbaum, Newark, N.J., Paul V. Esposito, Lewis, Overbeck & Furman, Chicago, Ill., Morton B. Silberman, Clark, Gagliardi & Miller, White Plains, N.Y., for defendants.

## MEMORANDUM AND PRETRIAL ORDER

WEINSTEIN, Chief Judge:

Plaintiffs, Vietnam War veterans and members of their families, claim to have suffered damages as a result of the veterans' exposure to herbicides in Vietnam. Defendants allegedly produced these herbicides.

Some years ago this court ruled that the litigation would proceed as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. *In re Agent Orange Product Liability Litigation,* 506 F.Supp. 762, 787 ff. (E.D.N.Y.1980). No certification order was, however, entered. The court noted that later stages of this litigation, especially those concerned with individual causation and damages, "may require reconsideration" of the certification. *Id.* at 790. Those later stages have now been reached.

The questions to be decided are whether the class should be certified, which of the types of classes described by Rule 23 should be utilized, how the class should be described, and for what issues. For the reasons indicated below, the class is certified for all issues under 23(b)(3), and on the issue of punitive damages under 23(b)(1)(B). This certification requires a number of decisions on the mechanics of notice described in the following discussion.

### INTRODUCTION

Plaintiffs have increasingly sought to use class actions to redress injuries caused by a single product manufactured for widespread use. A number of courts have seen the class action as the only alternative "to trying ... virtually identical lawsuits, one-by-one," resulting in the "bankruptcy of both the state and federal court systems." Williams, Mass Tort Class Actions, 98 F.R.D. 323, 324 (1983). Three factors in the instant litigation make the desirability of class certification even greater than it would be in most mass tort litigation.

The first is size. The potential size of plaintiffs' class in this litigation numbers in the tens of thousands. If the claims are dealt with individually, the result might "result in a tedium of repetition lasting well into the next century." *In re No. Dist. of Cal. "Dalkon Shield" IUD Product Liability Litigation,* 526 F.Supp. 887 (N.D.Cal.), rev'd, 693 F.2d 847 (9th Cir.1982), cert. denied sub nom. A.H. Robins v. Abed, —— U.S. ——, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983). By way of contrast, there were only several hundred plaintiffs in the class certified by the district court in *In re Federal Skywalk Cases,* 93 F.R.D. 415 (W.D.Mo.), vacated, 680 F.2d 1175 (8th Cir.1982), cert. denied sub nom. Johnson v. Stover, 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1983) and less than 4,000 in the *"Dalkon Shield"* litigation.

Second is the need to assure that the financial burden will ultimately fall on the party which, it may be found, should as a

matter of fairness bear it. As this court pointed out:

> Overarching the entire dispute is a feeling on both sides that whatever existing law and procedures may technically require, fairness, justice and equity in this unprecedented controversy demand that the government assume responsibility for the harm caused our soldiers and their families by its use of Agent Orange in Southeast Asia.

*In re Agent Orange Product Liability Litigation,* 506 F.Supp. 762, 784 (E.D.N.Y.1980). A class action is the best vehicle for achieving that end. A single class-wide determination on the issue of causation will focus the attention of Congress, the Executive branch and the Veterans Administration on their responsibility, if any, in this case. By contrast, possibly conflicting determinations made over many years by different juries make it less likely that appropriate authorities and the parties will arrive at a fair allocation of the financial burden, if any.

Third, certification may encourage settlement of the litigation. In a situation where there are potentially tens of thousands of plaintiffs, the defendants may naturally be reluctant to settle with individual claimants on a piecemeal basis.

### LAW

Rule 23(a) contains four prerequisites to the maintenance of a class action. They are:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims ... of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The four prerequisites as they applied to this litigation have already been carefully analyzed by the court and found to exist. *See In re "Agent Orange" Product Liability Litigation,* 506 F.Supp. 762, 787 (E.D.N.Y. 1980). Present as well as prior counsel for plaintiffs appear adequate to their complex task. The only matter on which further

elaboration is needed is the second prerequisite, the requirement that there be "questions of law or fact common to the class." Discussion of this point will be combined with a discussion of Rule 23(b)(3).

*Rule 23(b)(3)*

Rule 23(b)(3) states that if the four prerequisites of 23(a) are met, the class will be certified if, in addition, the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Thus, the issues to be decided are (1) do questions of law or fact common to the class predominate over any questions affecting only individual members, and (2) is a class action the best method for resolution of the litigation.

This court's prior finding that the government contract defense and the affirmative defense of misuse are common to the class is not contested by the parties. Defendants strongly contend, however, that the heart of any product liability claim, causation, can never be common to the class since each veteran, spouse and offspring who has instituted a lawsuit claiming direct or derivative injuries from the veteran's exposure to Agent Orange brings to this case a unique history upon which his or her claim for damages is predicated. Each veteran was exposed, if at all, at different times, at different places and under different circumstances. Therefore, the argument continues, a determination on the issue of causation, whether made as a finding of general causation or as a result of a finding in "test" cases, can never be dispositive of the claims of the other class members and as a result common questions do not "predominate."

Defendants support their argument by citing the Advisory Committee's Notes on Rule 23 and a number of recent cases that have denied (b)(3) certification in mass tort cases. *See, e.g., In re No. Dist. of Cal. "Dalkon Shield" IUD Product Liability Liti-*

*gation,* 693 F.2d 847 (9th Cir.1982), *cert. denied sub nom. A.H. Robins v. Abed,* —— U.S. ——, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983); *Payton v. Abbott Labs,* 100 F.R.D. 336 (D.Mass.1983) (DES Claims); *Boring v. Medusa Portland Cement Co.,* 63 F.R.D. 78 (M.D.Pa.1974) (county residents seeking damages for air pollution); *Yandle v. PPG Industries, Inc.,* 65 F.R.D. 566 (E.D.Tex. 1974) (employees of asbestos plant).

Without setting forth the details and analysis of each case, it is fair to say that the reasoning of all of the cases they rely upon is the same as that of the Advisory Committee and is supportive of defendants' reasoning. The drafters' notes state:

> A 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class certification because of the likelihood that significant questions not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways. In these circumstances an action nominally conducted as a class action would degenerate in practice into multiple lawsuits separately tried.

Advisory Committee Notes to Proposed Rules of Civil Procedure, 39 F.R.D. 69, 103 (1966). The defendants insist that the Agent Orange situation is even worse in that the focus of the litigation is not a "mass accident," but a mass products liability based upon a series of discrete events.

Following defendants' analysis, the District Court in Texas, in denying certification of a (b)(3) class consisting of all former employees and survivors of former employees of the defendant's asbestos plant, stated that the litigation

> is very different from the single mass accident cases that have in the past allowed a class action to proceed on the liability issues. Those cases have normally involved a single tragic happening which caused physical harm or property damage to a group of people, and affirmative defenses are absent. Usually, one set of operative facts will establish liability ... The Court is in agreement with the defendant that there is not a single act of negligence or proximate cause which would apply to each potential class member and each defendant in this case.

*Yandle v. PPG Industries, Inc.,* 65 F.R.D. 566, 571 (E.D.Tex.1974). Similarly, the District Court of New Hampshire denied (b)(3) certification to a class consisting of all New Hampshire women claiming injury from DES. Plaintiffs sought a blanket determination that DES causes injury *in utero.* The court stated that "such a determination [would] do nothing to advance the cause of class members as a group." *Mertens v. Abbott Laboratories,* 99 F.R.D. 38 at 41 (D.N.H.1983). If the class is certified, defendants suggest that the certification and class trial should be limited to the only issue which they see as common to the entire class, that is, the government contract defense.

■ The force of the defense contention is substantial since commonality is critical to certification. Nevertheless, it is not conclusive. In deciding whether common questions predominate, a pragmatic evaluation of the interest of the class members is given great weight. As Professors Wright and Miller put it:

> "In general, a Rule 23(b)(3) action is appropriate whenever the actual interests of the parties can be served best by a single action.... [T]he proper standard under Rule 23(b)(3) is a pragmatic one, which is in keeping with the basic objectives of the Rule 23(b)(3) class action. Thus, when common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis."

7A C. Wright & A. Miller, Federal Practice and Procedure §§ 1777, 1778 (1972). *See also id.* at § 1783; Wright & Colussi, The Successful Use of the Class Action Device in the Management of the *Skywalk* Mass Tort Litigation,—Univ. of Missouri-Kansas City L.Rev.—(1984) (forthcoming) (noting

the successful use of a 23(b)(3) class in the *Skywalk* litigation); Note, Federal Mass Tort Class Action: A Step Toward Equity and Efficiency, 47 Albany L.Rev. 1180 (1983). Litigation economies are also relevant. One commentator has gone so far as to suggest that "the chief purpose of the predomination inquiry is not to measure the compatibility of class action procedures with substantive law but to determine whether a class action will in fact realize any litigation economies." Note, Developments in the Law—Class Actions, 89 Harv. L.Rev. 1318, 1505 (1976).

■ Unlike litigations such as those involving DES, Dalkon Shield and asbestos, the trial is likely to emphasize critical common defenses applicable to the plaintiffs' class as a whole. They will include such matters as that the substances manufactured could not have caused the injuries claimed; that if any injuries were caused by defendants' product it was because of the particular use and misuse made by the government; and that the government, not the manufacturers were wholly responsible because the former knew of all possible dangers and assumed full responsibility for any damage. No "defenses to liability [are] present affecting the individuals in different ways." *Advisory Committee Notes*, 39 F.R.D. at 103. It is anticipated that a very substantial portion of a prospective four-month trial will be devoted to just those defenses. Certification would be justified if only to prevent relitigating those defenses over and over again in individual cases.

Defendants' proposal to limit the class trial to the issue of the government contract defense is not a workable one. As this court has already noted, the issue of the government contract defense is inextricably interwoven with the issue of causation. *In re Agent Orange Product Liability Litigation*, 565 F.Supp. 1263, 1275–76 (E.D. N.Y.1983). It would be impossible to try the former without litigating and reaching conclusions as to the latter.

Even more persuasive is the extraordinary size of plaintiffs' class and the posture of the dispute. Unlike a case such as *Mertens* or *"Dalkon Shield"*, a determination on the issue of causation would do much to resolve the individual claims of the class members. The plaintiffs have indicated that there are a number of types of injuries which Agent Orange allegedly caused. The court has, therefore, ordered that, for purposes of the causation issue, plaintiffs' counsel will choose representative claimants for each type of injury alleged. A determination adverse to the plaintiffs in all categories could resolve the litigation and save considerable judicial and lawyers' time. Even if there is a finding of no causation as to less than all of the types of damage alleged, that determination alone would be likely to resolve tens of thousands of individual claims. *Cf. In re Antibiotic Antitrust Actions*, 333 F.Supp. 278, 281, *modified*, 333 F.Supp. 291; 333 F.Supp. 299 (S.D.N.Y. 1971).

Were there a finding of causation favorable to the plaintiffs across the board, that, too, will help resolve the individual claims of the class members. Unlike the asbestos, *DES, Dalkon Shield,* and *Federal Skywalk* cases, defendants contest liability not just as to individual members of the class, but as to any members of the class. Thus, unlike other mass product liability cases, a determination of general causation will serve both the interests of judicial economy and assist in the speedy and less expensive resolution of individual class member's claims. *Cf. Thompson v. Proctor & Gamble Co.*, No. C–80–3711 EFL (N.D.Cal. December 7, 1982), slip op. at 4; *Mertens v. Abbott Laboratories*, at 42–43. *See also* Note, Class Actions in a Products Liability Context— The Predomination Requirement and Cause-In-Fact, 7 Hofstra L.Rev. 859 (1979).

Finally, the court may not ignore the real world of dispute resolution. As already noted, a classwide finding of causation may serve to resolve the claims of individual members, in a way that determinations in individual cases would not, by enhancing the possibility of settlement among the parties and with the federal government.

The considerations already described make it clear why effective case manage-

ment would not be possible were the court to pursue the alternative of allowing individual plaintiffs to intervene in a single case. A verdict in such a case either as to the affirmative defenses or causation might not be binding on the tens of thousands of plaintiffs not parties to the suit. A class action is, therefore, "superior to other available methods for the fair and efficient adjudication of the controversy."

Defendants further object that even if the litigation is otherwise suited for (b)(3) certification, the need to apply the law of dozens of different states would preclude certification or at least require different subclasses for each state. In most cases, this argument would have considerable force. As this court's opinions dealing with the choice-of-law problem in diversity cases and the law applicable to manufacturers' liability will show, it is of relatively little significance in this litigation. There is, as will be demonstrated, a consensus among the states with respect to the rules of conflicts and applicable substantive law that provides, in effect, a national substantive rule governing the main issues in this case. Since, in the main, one law applies to all the claims, certification of one class is appropriate. *Cf. In re No. Dist. of Calif. "Dalkon Shield" IUD Product Liability Litigation,* 693 F.2d 847, 850 (9th Cir.1982), *cert. denied sub nom. A.H. Robins v. Abed,* —— U.S. ——, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983).

Should there subsequently develop a need for creation of subclasses as the litigation develops and applicable substantive or procedural law requires application of individual states' laws, further subclasses can be created. *See, e.g., Halderman v. Pennhurst State School & Hospital,* 612 F.2d 84, 110 (3d Cir.1979), *rev'd on other grounds,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981); *Kaufman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 737 (3d Cir.1970); *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 566 (2d Cir.1968); *In re Caesars Palace Securities Litigation,* 360 F.Supp. 366, 398 (S.D.N.Y.1973).

The last objection the defendants have to (b)(3) certification is that a class-wide trial on causation violates their right to have a single jury rule on the question of the defendants' liability to each Agent Orange plaintiff. Issues may not be bifurcated for trial, they point out, unless it appears that the issues are "so distinct and separable" that they may be tried separately "without prejudice." *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 500, 501, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931); *Franchi Construction Co. v. Combined Ins. Co.,* 580 F.2d 1, 8 (1st Cir.1978). If the issues are so interwoven that separate trials would cause confusion and uncertainty, a litigant is denied his right of fair trial. As applied to the *Agent Orange* litigation, defendants contend that advising a jury in a subsequent trial on "specific" causation that there has already been a "general" determination that Agent Orange could cause plaintiff's illness would unfairly prejudice the jury in plaintiff's favor. Defendants' argument is not persuasive. It is common in product liability suits for there to be a tacit admission that the defendant's product *could* have caused the injury alleged with the question for the jury being whether it actually did cause it. Juries often distinguish between general and specific causation.

In sum, the court finds (1) that the affirmative defenses and the question of general causation are common to the class, (2) that those questions predominate over any questions affecting individual members, and (3) given the enormous potential size of plaintiffs' case and the judicial economies that would result from a class trial, a class action is superior to all other methods for a "fair and efficient adjudication of the controversy."

*Rule 23(b)(1)(A)*

 Certification is sought pursuant to Rule 23(b)(1)(A). The rule requires a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

The court has already stated that "Rule 23(b)(1)(A) is not meant to apply ... where

the risk of inconsistent results in individual actions is merely the possibility that the defendants will prevail in some cases and not in others, thereby paying damages to some claimants and not others." 506 F.Supp. at 789 (citations omitted). If the risk of paying money damages to some and not others were sufficient for (b)(1)(A) certification, almost every class action could be certified under (b)(1)(A). *See McDonnell Douglas Corporation v. United States District Court, Central District of California,* 523 F.2d 1083, 1086 (9th Cir.1975), *cert. denied sub nom. Flanagan v. McDonnell Douglas Corporation,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976); *see also A. Miller, An Overview of Federal Class Actions: Past, Present and Future* 43 (1973).

Plaintiffs attempt to distinguish the current litigation by expressing concern that if different courts decide differently future contractors will not know the possible extent of their responsibility and whether they should bid on government defense or war contracts. Their concern is commendable, but misplaced. Any inconsistent or erroneous theories of law applied by trial courts in Agent Orange cases will certainly be rectified in the highest courts. It is unlikely that the Supreme Court would avoid clarifying the law on the subject. Rule 23(b)(1)(A) is not applicable.

*Rule 23(b)(1)(B)*

Plaintiffs also seek certification of a mandatory class under Rule 23(b)(1)(B). Under that section, when the four prerequisites of 23(a) are met, the class will be certified if, in addition, as a practical matter, individual adjudications would prevent or greatly impede the ability of other members to protect their interests. It reads in part:

> adjudications with respect to individual members of the class . . . would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests . . .

The rationale for using (b)(1)(B) in mass tort litigation is that of the "limited fund." As Professor Miller put the matter:

> The paradigm Rule 23(b)(1)(B) case is one in which there are multiple claimants to a limited fund . . . and there is a risk that if litigants are allowed to proceed on an individual basis those who sue first will deplete the fund and leave nothing for latecomers.

A. Miller, *An Overview of Federal Class Actions: Past, Present and Future* 45 (1977).

As applied to mass tort litigation, the "limited fund" is generally construed to be the assets of the defendants as extended by insurance coverage and the assets of the insurers. The "fund" may also have a more limited bearing, as where the first judgments may take all of a limited punitive damage award. If earlier claimants proceed on an individual basis, it is urged, they will deplete the defendants' assets and leave nothing for later claimants. *See, e.g.,* Note, *Mechanical and Constitutional Problems in the Certification of Mandatory Multistate Mass Tort Class Actions under Rule 23,* 49 Brooklyn L. Rev. 517 (1983); Note, *Class Actions for Punitive Damages,* 81 Mich.L.Rev. 1787 (1983); Note, *Class Certification in Mass Accident Cases Under Rule 23(b)(1),* 96 Harv.L.Rev. 1143 (1981).

Before determining whether to certify the plaintiffs' class under (b)(1)(B), two threshold questions must be addressed. The first is whether (b)(1)(B) should ever be applied in mass tort litigation. The second, assuming that it should, is what standard to use in determining whether there is a risk that earlier litigants will deplete the fund and leave nothing for latecomers.

Although the matter is not free from doubt, most courts that have considered the issue have concluded that, in the proper circumstances, Rule (b)(1)(B) may be used in mass tort cases. *See, e.g., Green v. Occidental Petroleum Corp.,* 541 F.2d 1335, 1340 n. 9 (9th Cir.1976); *Coburn v. 4–R Corp.,* 77 F.R.D. 43 (E.D.Ky.1977), *petition for mandamus denied sub nom. Union Light, Heat & Power Co. v. United States Dist. Court,*

588 F.2d 543 (6th Cir.1978), *cert. dismissed,* 443 U.S. 913, 99 S.Ct. 3103, 61 L.Ed.2d 877 (1979); *Hernandez v. Motor Vessel Skyward,* 61 F.R.D. 558 (S.D.Fla.1973). *See also,* Seltzer, Punitive Damages in Mass Tort Litigation: Addressing the Problems of Fairness, Efficiency and Control, 52 Fordham L.Rev. 37 (1983); Note, Federal Mass Tort Class Action: A Step Toward Equity and Efficiency, 47 Albany L.Rev. 1180 (1983).

Two recent circuit courts reversed after certifications of a Rule (b)(1)(B) class in mass tort litigation. *See "Dalkon Shield,"* 693 F.2d 847 (9th Cir.1982); *Federal Skywalk Cases,* 680 F.2d 1175 (8th Cir.1982). Both courts recognized the applicability of (b)(1)(B) certification in mass tort cases. In *"Dalkon Shield,"* the court stated that "[we] are not necessarily ruling out the class action tool as a means for expediting multiparty product liability actions in appropriate cases." 693 F.2d at 851. The court's decision was based largely on the fact that no plaintiff or defendant supported class certification. In *In re Federal Skywalk* cases, the court's decision was expressly based on the narrow grounds that the district court's certification violated the Anti-Injunction Act. 680 F.2d at 1183. Neither of these considerations apply here.

Courts that have considered the issue disagree over how to determine when the danger of fund exhaustion is great enough to justify certification. All conclude that "without more, numerous plaintiffs and a large ad damnum clause should not guarantee (b)(1)(B) certification." *Payton v. Abbott Labs,* 83 F.R.D. 382, 389 (D.Mass. 1979). The Ninth Circuit has held that (b)(1)(B) certification is proper only when "separate punitive damage claims *necessarily* will affect later claims." *"Dalkon Shield,"* 693 F.2d at 852 (emphasis supplied). Strict adherence to the Ninth Circuit certainty standard would mean either the elimination of (b)(1)(B) certification in mass tort actions (which is the position at least one court has taken (*see Payton,* 83 F.R.D. 382, 389)), or require a pretrial determination on the merits, which the Supreme Court has frowned on in another class action context. *See*

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); *cf. Dolgow v. Anderson,* 438 F.2d 825 (2d Cir.1970) (no mini-trial on the merits). This strict Ninth Circuit standard flies in the face of the language of Rule 23, which requires only that there be a "risk" of impairment, not that there be a conclusive determination of impairment. *See* Note, Class Certification in Mass Accident Cases Under Rule 23(b)(1), 96 Harv.L.Rev. 1143, 1158 (1983).

In *Coburn,* 77 F.R.D. at 46, one of three unreversed mass tort cases where (b)(1)(B) certification was actually granted, the court did not articulate what standard it was using, stating merely that it found a "risk" of impairment. Given the speculative nature of many of the rulings that must be made at the time of a class certification when the facts have not been fully developed, such as typicality of representative claims and adequacy of representation, the probable risk standard appears most useful.

■ How high the probability needs to be requires an evaluation of the advantages and disadvantages of class certification to the actual and prospective parties. We must, for example, remember that the court is in the position of protecting a large group of war veterans against the possibility that after possibly winning a long-sought after victory in the courts, they will not be able to collect on a judgment in their favor. Without now rehearsing all those effects, it is enough to say that considering the particular facts of the instant litigation, the proper standard is whether there is substantial probability—that is less than a preponderance but more than a mere possibility—that if damages are awarded, the claims of earlier litigants would exhaust the defendants' assets. Considering the needs and problems of parties aligned both as plaintiffs and defendants, the probability assessed at this time on the basis of limited information is somewhat less than 50 percent. The less-than-preponderance test is well recognized in procedural matters. *See, e.g., Rogers v. Missouri Pacific Railroad,* 352 U.S. 500,

509–10, 77 S.Ct. 443, 450, 1 L.Ed.2d 493 (burden of coming forward in F.E.L.A. cases); *Fitzgerald v. A.L. Burbank & Co.,* 451 F.2d 670, 681 (2d Cir.1971) ("reasonable probability" of employer's negligence in F.E.L.A. cases); *Bush v. United States,* 389 F.2d 485 (5th Cir.1968) (in forfeiture case "less. than prima facie legal proof . . . more than mere suspicion . . . reasonable under all the circumstances"); *United States v. One 1975 Lincoln Continental,* 72 F.R.D. 535, 540 (S.D.N.Y.1976) ("probable cause" in forfeiture case); Note, F.E.L.A., Negligence and Jury-Trials-Speculation Upon a Scintilla, 11 Wes.Res.L.Rev. 123, 136 (1959) (interpretation supported by the "spirit of the statute"). *Cf. Calvert v. Katy Taxi, Inc.,* 413 F.2d 841 (2d Cir.1969) (naked proof of collision enough to go to jury); Morgan & Maguire, Cases and Materials on Evidence, 1076–79, 1088–94, 1106–12 (7th ed. 1983); *United States v. Schipani,* 289 F.Supp. 43 (E.D.N.Y.1968), *aff'd,* 414 F.2d 1262 (2d Cir.1969), *cert. denied,* 397 U.S. 922, 90 S.Ct. 902, 25 L.Ed.2d 102 (1970); *United States v. Fatico,* 458 F.Supp. 388, *aff'd,* 603 F.2d 1053 (2d Cir.1979), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980).

To determine whether that substantial probability exists in this case, the Special Master, Sol Schreiber, was directed to conduct a limited evidentiary hearing. *Cf.* *"Dalkon Shield,"* 693 F.2d at 852 ("the district court erred by ordering certification without . . . even a preliminary fact-finding inquiry concerning [the defendant's] actual assets, insurance, settlement experience and continuing exposure."). At the hearing, defendants' counsel submitted certified copies of their most recent balance sheets. The plaintiffs' counsel selected a cross-section of their cases and made a brief presentation as to the nature of the damage alleged. The Master found that the combined net assets of the defendants, including insurance, total approximately $9 to $16 billion. Collection of judgments, if any, would be spread over a number of years and payment could probably be handled from year-to-year and paid out of earnings. The Master also found that, based on the information presently

available, his best estimate is that the number of claims may total 40,000 to 50,000. He concluded that the evidence now before the court does not support the view that provable claims will exhaust the defendants' assets.

The court has carefully reconsidered the Master's findings and all other information before the court. It is convinced that the risks as reasonably evaluated at this stage of the litigation allow (b)(1) certification on the issue of punitive damages only. The power of the court to certify the class under more than one section is not contested by the parties. *See* Manual for Complex Litigation § 1.43 (1982).

Plaintiffs contend that the limited fund can be found here in one of two ways. First, they contend that compensatory damages will exceed the net worth of the defendants. Second, they contend that even if the compensatory damages do not satisfy (b)(1), punitive damages will.

As to their first contention, the information elicited at the hearing and in appearances before this court indicates that sufficient assets are and will be available to respond to any probable judgments. Without the aid of a full trial, on the basis of facts presently available, it cannot be said that there is a substantial probability that if plaintiffs' claims are successful, the compensatory recovery will exceed defendants' assets.

Based on information thus far supplied to the court, it also cannot be found, as. a preliminary matter, that there is a substantial probability that punitive damages, if allowed will, when added to compensatory damages, exceed defendants' assets. Apart from the equivocal nature of the evidence on the claimed callous disregard by the defendants of the effect of their product, also militating against a trial on award on punitive damages is the fact that prejudicial evidence is likely to be introduced on the punitive damage issue. Finally, there may be a policy against substantial punitive damages in a case such as this. An award of huge punitive damages might discourage

government contractors from bidding for defense contracts and manufacturing material vitally needed for the national defense and might "seriously impair" the government's "ability to formulate policy and make judgments pursuant to its war powers." *Sanner v. Ford Motor Co.,* 144 N.J. Super. 1, 364 A.2d 43 (1976), *aff'd,* 154 N.J. Super. 407, 381 A.2d 805 (1977), *cert. denied,* 75 N.J. 616, 384 A.2d 846 (1978).

Evidence that the government had almost as much, if not more, knowledge of the dangers posed by Agent Orange, and control by the government of its use are among the additional factors that would argue against punitive damages. It would be unfair to punish the defendants while the government, which might be equally, or even more, culpable, avoided all liability. Finally, merely instructing the jury as to punitive damages may distort the juror perceptions and make the case even more difficult to control. *See Koufakis v. Carvel,* 425 F.2d 892, 905 (2d Cir.1970).

Nevertheless, there is a substantial probability that limited punitive damages may be allowed. If they are, it would be equitable to share this portion of the possible award among all plaintiffs who ultimately recover compensatory damages. Yet, if no class is certified under Rule (b)(1)(B), non-class members who opt out under Rule 23(b)(3) would conceivably receive all of the punitive damages or, if their cases are not completed first, none at all.

It is axiomatic that the purpose of punitive damages is not to compensate plaintiffs for their injury, but to punish defendants for their wrongdoing. In theory, therefore, when a plaintiff recovers punitive damages against a defendant, that represents a finding by the jury that the defendant was sufficiently punished for the wrongful conduct. There must, therefore, be some limit, either as a matter of policy or as a matter of due process, to the amount of times defendants may be punished for a single transaction. *See, e.g., Roginsky v. Richardson-Merrell, Inc.,* 378 F.2d 832, 838–42 (2d Cir.1967); Putz & Astiz, Punitive Damage Claims of Class Members Who Opt Out: Should They Survive?, 16 U.San.Fran. L.Rev. 1, 18–40 (1981). At the very least, a trial court in passing on future claims may admit evidence as to the payment of prior awards which may be used by a jury to reduce an award to a party seeking additional punishment for the same misconduct. *See, e.g., State ex rel. Young v. Crookham,* 290 Or. 61, 618 P.2d 1268, 1272–73 (1980); Redden, Punitive Damages, § 4.8 (1980); Restatement (Second) of Torts, § 909 (1977); Morris, Punitive Damages in Tort Cases, 44 Harv.L.Rev. 1173, 1195 (1931). There is, therefore, a substantial probability that "adjudication with respect to individual members of the class ... would as a practical matter be dispositive of the interests of the other members not parties to the adjudication." Accordingly, a class of all those described as members of the .(b)(3) class are also certified under (b)(1)(B). The (b)(1)(B) certification is for the award of punitive damages.

How this decision under (b)(1)(B) affects plaintiffs' rights to opt out under Rule (b)(3) need not be decided now. In the first place, it is not clear that any appreciable number of plaintiffs will exercise their right to opt out under (b)(3). Nor is it clear that any punitive damages will be awarded. Thus, it seems sensible to allow exercise of opt-out powers, with the ultimate effect of that decision to be left for resolution on motion, full briefing and argument.

Assessment of possible damages is for the purpose of a class certification ruling only. It does not constitute a determination of what damages will be allowed after trial.

## CLASS DEFINITION AND NOTICE

There remain the questions of defining the class and notice to the class. The defendants' contention that the class as the court has defined it is unworkable because it is subjective ("all veterans who were injured ... by exposure to Agent Orange") is a *non sequitur.* Subjectiveness does not

affect the applicability of the class trial's findings to members of the class and it does not prejudice the defendants in any way. The class is, therefore, adequately defined and clearly ascertainable. *See Ihrke v. Northern States Power Company,* 459 F.2d 566 (8th Cir.1972).

Federal Rule 23(c)(2) provides that, in a class action maintained under Rule 23(b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

■ When members of the class can be identified through reasonable effort, individual notice is required; the expense of giving the notice must be paid by plaintiffs. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Abrams v. Interco, Inc.,* 719 F.2d 23 at 30 (2d Cir.1983).

■ What is "the best notice practicable under the circumstances" and what constitutes "reasonable effort" is a determination of fact to be made in the individual litigation. *In re Franklin National Bank Securities Litigation,* 599 F.2d 1109 (2d Cir. 1978); *see also In re Nissan Motor Corp. Antitrust Litigation,* 552 F.2d 1088, 1098 n. 11 (5th Cir.1977) (and cases cited therein); C. Wright & A. Miller, Federal Practice & Procedure, at § 1786; Manual for Complex Litigation, § 1.45 (1982).

Accordingly, it is ORDERED:

1. Certification of this matter as a class action under Federal Rule of Civil Procedure 23(b)(3) is granted. Judge Pratt's decision certifying the class action status of this litigation under Rule 23(b)(3) is modified and confirmed. Plaintiffs' motion seeking certification under Rule 23(b)(1)(B) is granted only with respect to the claim for punitive damages.

2. The plaintiff class is defined as those persons who were in the United States, New Zealand or Australian Armed Forces at any time from 1961 to 1972 who were injured while in or near Vietnam by exposure to Agent Orange or other phenoxy herbicides, including those composed in whole or in part of 2, 4, 5-trichlorophenox-yacetic acid or containing some amount of 2, 3, 7, 8-tetrachlorodibenzo-p-dioxin. The class also includes spouses, parents, and children of the veterans born before January 1, 1984, directly or derivatively injured as a result of the exposure.

The definition does not imply a conclusion that anyone within the class was injured as a result of exposure to any herbicide.

3. Notice to the members of the class shall be provided as follows:

(a) Plaintiffs' counsel, at their own expense, shall cause a copy of the written notice, attached as Exhibit A, to be mailed by first class United States mail to all persons who have filed actions as plaintiffs in the District Courts of the United States, or filed actions in state courts later removed to a federal court, which are pending in or have been transferred to this court for consolidated proceedings by the Panel on Multi-District Litigation, together with all persons who have moved to intervene or are intervenors, and each class member presently represented by counsel associated with plaintiffs' management committee who has not yet commenced an action or sought intervention. Mailing of the notice shall take place within 30 days of this Order.

(b) Plaintiffs' counsel, at their own expense, shall cause to be mailed a copy of the written notice to all persons who are currently listed on the United States Government's Veteran's Administration "Agent Orange Registry." This mailing shall take place within 50 days of this Order.

(c) Notice shall be mailed in envelopes that are printed only with the names of the addressee and the Clerk of this Court. Plaintiffs' counsel shall maintain a record of the name and address of each person to whom the notice is mailed. The record shall be filed with the Clerk of the Court not later than 70 days after the issuance of this Order.

(d) Plaintiffs' counsel, at their own expense, shall obtain a post office box in Smithtown, New York, 11787, in the name

of the Clerk of the Court, and advise the court and the parties of the box number not later than 15 days after the issuance of this Order. The box shall be rented until further order of the court. Plaintiffs' counsel shall on a daily basis review the contents of the post office box and prepare a listing of all exclusion requests received, which shall be available to the court and the parties for inspection and copying, together with the exclusion requests. Plaintiffs' counsel shall send a copy of the notice and the exclusion request form to each person who writes to the Clerk of the Court requesting them. Each day plaintiffs' counsel shall transmit to the court and the parties copies of any communications (other than exclusion requests or requests for forms) that are received at the post office box. Plaintiffs' counsel shall maintain a record, together with the originals, of all mail returned as undelivered.

(e) Plaintiffs' counsel, at their own expense, shall serve a radio and television announcement notice in the form of Exhibit B on the nationwide networks of the American Broadcasting Company, the Columbia Broadcasting System, the Mutual Broadcasting System, the National Broadcasting Company, and the Public Broadcasting and Television Networks and on radio stations with a combined coverage of at least 50 percent of the listener audience in each of the top one hundred radio markets in the United States within 50 days of this Order.

Along with the radio and television notice served upon the nationwide radio and television broadcasting systems and radio stations, plaintiffs' counsel shall request that the notice be read as set forth in Exhibit B without interruption or comment, either alone or in conjunction with the showing on television of the text of Exhibit B. Plaintiffs' counsel shall request that each participating radio and television broadcasting station advise them of the dates and times at which the notice was broadcast or shown.

Within 90 days of this Order, plaintiffs' counsel shall furnish to the court and the parties a report identifying the name and location of each radio station broadcasting the announcement, if known, and the date and time of each announcement. The court will then determine if further notice is required.

(f) Plaintiffs' counsel, at their own expense, shall publish in the following newspapers and magazines an announcement in two successive weeks (but if publication is monthly, only once) in the form of Exhibit C: the nationwide edition of *The New York Times, U.S.A. Today, Time Magazine,* the *American Legion Magazine, VFW Magazine, Air Force Times, Army Times, Navy Times,* and the *Leatherneck;* the ten largest circulation newspapers in Australia, including *The Australian;* and the five largest daily circulation newspapers in New Zealand, including *The Dominion.* Publication shall be completed as soon as practicable, but no later than March 1, 1984. The size of the notice shall be not less than one-eighth, nor more than one-third, of the newspaper or magazine page.

(g) Plaintiffs' counsel shall, at their own expense, obtain a toll-free "800" telephone number in the name of the Clerk of the Court. The number shall be in effect no later than January 1, 1984 to at least May 1, 1984. The number shall be manned on a daily basis, from at least Monday to Friday, 9:00 a.m. to 5:00 p.m., E.S.T., with knowledgeable persons (or a recorded announcement and recording device) who shall tell callers where to write for further information, but who shall not give advice concerning rights and responsibilities in this litigation. A record of those calling and giving their names and addresses shall be kept. Those requesting a copy of Exhibit A shall be sent one. No oral exclusion request shall be taken. Plaintiffs' counsel shall give written instructions to those answering the phone. A copy of such instructions and any recorded announcement shall be filed with the Clerk.

(h) The Clerk of the Court shall send this order and notice to the Governor of each of the states of the United States. He shall respectfully request each Governor to refer the notice to any state organization created by the executive or legislative branches

dealing with the problems of Vietnam veterans and request that the notice be sent to all those known Vietnam veterans who may be members of the class described in the Order, or that a list of names and addresses be supplied to this court so that notice may be mailed by the plaintiffs' counsel. The Clerk shall respectfully request a list of those to whom notice has been sent by any state agency.

(i) The notice provided for in this Order is the best reasonable and practicable notice under the circumstances of this litigation.

This Order is stayed for seven days to permit an application for a further stay to the Court of Appeals.

So Ordered.

*Exhibit A*

## LEGAL NOTICE TO CLASS MEMBERS OF PENDENCY OF CLASS ACTION

This notice is given to you pursuant to an Order of the United States District Court for the Eastern District of New York and Rule 23(c)(2) of the Federal Rules of Civil Procedure. It is to inform you of the pendency of a class action in which you may be a member of the class, and of how to request exclusion from the class if you do not wish to be a class member. None of the claims described below have been proven. It is contemplated that a trial by court and jury will take place in this court beginning in May, 1984.

1. There are now pending in the United States District Court for the Eastern District of New York claims brought by individuals who were in the United States, New Zealand, or Australian Armed Forces assigned to or near Vietnam at any time from 1961 to 1972, who allege personal injury from exposure to "Agent Orange" or other phenoxy herbicides, including those composed in whole or in part of 2, 4, 5-trichlorophenoxyacetic acid or containing some amount of 2, 3, 7, 8-tetrachlorodibenzo-p-dioxin (collectively referred to as "Agent Orange").

2. The plaintiffs include spouses, parents, and children born before January 1, 1984, of the servicepersons who claim direct or derivative injury as a result of exposure. Plaintiffs include children asserting claims in their own right for genetic injury and birth defects caused by their parents' exposure to "Agent Orange" and other phenoxy herbicides. Wives of veterans exposed to "Agent Orange" in Vietnam seek to recover in their own right for miscarriages. Plaintiffs' theories of liability include negligence, strict products liability, breach of warranty, intentional tort and nuisance. Damage claims of family members include pecuniary loss for wrongful death, loss of society, comfort, companionship, services, consortium, guidance and support. In addition, plaintiffs seek punitive damages for defendants' alleged misconduct in furnishing herbicides to the United States Government.

3. The defendants, who are alleged to have manufactured or sold "Agent Orange" to the United States Government, are Dow Chemical Company, Monsanto Company, T.H. Agriculture & Nutrition Company, Inc., Diamond Shamrock Chemicals Company, Uniroyal, Inc., Hercules Incorporated, and Thompson Chemical Corporation. All the defendants deny that the plaintiffs' alleged injuries were in any way caused by "Agent Orange." They assert that injury, if any, was not caused by a product produced by them. The defendants have challenged these suits on various other grounds including plaintiffs' lack of standing to sue, lack of jurisdiction, statutes of limitation, insufficiency in law, plaintiffs' contributory negligence, and plaintiffs' assumption of known risks. Each has also asserted such affirmative defenses as the "government contract defense" and the Government's misuse of its product. In third-party complaints, the defendants asserted claims against the United States of America seeking indemnification or contribution in the event the defendants are held liable to the plaintiffs. The Government has asserted its power to prevent anyone from suing it.

4. This court has certified a class action in this proceeding under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The

plaintiff class consists of those persons who were in the United States, New Zealand, or Australian Armed Forces assigned to Vietnam at any time from 1961 to 1972 who were injured while in or near Vietnam by exposure to "Agent Orange" or other phenoxy herbicides including those composed in whole or in part of 2, 4, 5-trichlorophenoxyacetic acid or containing some amount of 2, 3, 7, 8-tetrachlorodibenzo-p-dioxin. The class also includes spouses, parents, and children born before January 1, 1984, directly or derivatively injured as a result of the exposure.

The court may reconsider this decision, by decertifying, modifying the definition of the class, or creating subclasses in the light of future developments in the case. The definition does not imply a conclusion that anyone within the class was injured as a result of exposure to any herbicide.

5. The court has also certified a Rule 23(b)(1)(B) class limited to claims for punitive damages. The class includes the same persons as are in the Rule 23(b)(3) class. The court has decided not to permit members of the class to seek exclusion on the issue of punitive damages. You will therefore be bound by the court's rulings on punitive damages whether or not you seek exclusion on the issue of compensatory damages.

6. Trial of the representative plaintiffs' claims is scheduled to commence before Jack B. Weinstein, Chief Judge of the United States District Court for the Eastern District of New York, and a jury on May 7, 1984.

7. If you are a member of the plaintiff class you will be deemed a party to this action for all purposes unless you request exclusion from the Rule 23(b)(3) class action covering compensatory damages.

8. If you do not request exclusion from the class by May 1, 1984, you will be considered one of the plaintiffs of this class action for all purposes. You may enter an appearance through counsel of your own choice. You will be represented by counsel for the class representatives unless you

choose to enter an appearance through your own legal counsel.

9. Class members who do not request exclusion will receive the benefit of, and will be bound by, any settlement or judgment favorable to the class covering compensatory damages. The class representatives' attorneys fees and costs will be paid out of any recovery of compensatory and other damages obtained by the class members. You will not be charged with costs or expenses whether or not you remain a member of the class. However, if you choose to enter an appearance through your own legal counsel, you will be liable for the legal fees of your personal counsel.

10. Class members who do not request exclusion will be bound by any judgment adverse to the class, and will not have the right to maintain a separate action even if they have already filed their own action.

11. If you wish to remain a member of the class for all purposes, you need do nothing at this stage of the proceedings.

12. *If you wish to be excluded from the class for compensatory damages, you must submit a written request for exclusion.* For your convenience, the request for exclusion may be submitted on the attached form, entitled "Request for Exclusion." If you received this notice by mail, a Request for Exclusion form should have accompanied it. If you did not receive a Request for Exclusion form, you may obtain a copy by writing to the Clerk of the Court, P.O. Box ___, Smithtown, New York 11787. A written Request for Exclusion may be submitted without using the Request for Exclusion form, but it must refer to the litigation as "In re 'Agent Orange' Product Liability Litigation, MDL No. 381"; include your name and address in your statement requesting exclusion. Any request for exclusion must be received on or before May 1, 1984 by the Clerk of the United States District Court for the Eastern District of New York at Post Office Box ___, Smithtown, New York, 11787 or at a federal courthouse in the Eastern District of New York.

13. Under the court's Order, all potential plaintiffs are deemed to be members of

a Rule 23(b)(1)(B) class on the issue of punitive damages. At the time of trial the court will determine whether the facts presented warrant the submission of a punitive damage claim to the jury. In the event that there is a recovery for punitive damages, it will be shared by those plaintiffs who are successful in prosecuting their claims in this or other suits on an appropriate basis to be determined by the court. If you choose to exclude yourself from this class action on the issue of compensatory damages, you may do so without necessarily losing your right to share in any punitive damages.

14. The plaintiffs in this class action are represented by a group of attorneys who have been tentatively approved by the Court as the Agent Orange Plaintiffs' Management Committee. Members of this committee include:

Phillip E. Brown, Esq.
Hoberg, Finger, Brown, Cox & Molligan
703 Market Street (18th Floor)
San Francisco, California 94103

Stanley M. Chesley, Esq.
Waite, Schneider, Bayless and Chesley Co. L.P.A.
1513 Central Trust Tower
Fourth and Vine Streets
Cincinnati, Ohio 45202

David J. Dean, Esq.
Dean, Falanga & Rose
One Old Country Road
Carle Place, New York 11514

Thomas W. Henderson, Esq.
Baskin & Sears
Frick Building (10th Floor)
Pittsburgh, Pennsylvania 15219

Benton Musselwhite, Esq. & John O. O'Quinn, Esq.
609 Fannin (Suite 517)
Houston, Texas 77002

Stephen J. Schlegel, Esq.
Schlegel & Trafelet, Ltd.
One North LaSalle Street
Suite 3900
Chicago, Illinois 60602

Newton B. Schwartz, Esq.
Houston Bar Center Building
723 Main (Suite 325)
Houston, Texas 77002

David J. Dean, Esq. has been designated by the court as plaintiffs' spokesman. The Management Committee is being aided in its duties of representing the interests of the plaintiffs by other law firms in the United States and abroad.

15. *Examination of pleadings and papers.* This notice is not all inclusive. References to pleadings and other papers and proceedings are only summaries. For full details concerning the class action and the claims and defenses which have been asserted by the parties, you or your counsel may review the pleadings and other papers filed at the office of the Clerk of the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201, on any business day from 9:00 a.m. to 5:00 p.m.

16. *Interpretation of this Notice.* Except as indicated in the orders and decisions of the United States District Court for the Eastern District of New York, no court has yet ruled on the merits of any of the claims or defenses asserted by the parties in this class action. This notice is not an expression of an opinion by the court as to the merits of any claims or defenses. This notice is being sent to you solely to inform you of the nature of the litigation, your rights and obligations as a class member, the steps required should you desire to be excluded from the class, the court's certification of the class, and the forthcoming trial.

Robert C. Heinemann
Clerk, United States District
Court for the Eastern District
of New York

DATED: Brooklyn, New York
January 12, 1984

## EXCLUSION REQUEST FORM

Clerk
United States District Court
for the Eastern District of New York
P.O. Box —
Smithtown, New York 11787 .

Re: In re "Agent Orange" Product Liability Litigation MDL No. 381

I hereby request to be excluded from the class action in the above-captioned matter.

_____
(signature)

Name (print): _____

Address: _____

_____

If not a member of the armed forces who served in or near Vietnam, how are you related to such a serviceperson? _____

_____

Armed forces unit of serviceperson _____

Armed forces identifying number of serviceperson _____

Period of service in or near Vietnam _____

_____

I learned about this suit by _____

*Exhibit B (Radio and Television Communication)*

### SPECIAL ANNOUNCEMENT

Were you or anyone in your family on military duty in or near Vietnam at any time from 1961 to 1972? If so, listen carefully to this important message about a pending "Agent Orange" lawsuit that may affect your rights.

If you or anyone in your family claim injury, illness, disease, death, or birth defect as a result of exposure to "Agent Orange," or any other herbicide in or near Vietnam at any time from 1961 to 1972, you are now a member of a class in an action brought on your behalf in the United States District Court for the Eastern District of New York, unless you take steps to exclude yourself. The class is limited to those who were injured by exposure to Agent Orange or any other herbicide while serving in the armed forces in or near Vietnam at any time from 1961 to 1972. The class also includes members of families who claim derivative injuries such as those to spouses and children.

The court expresses no opinion as to the merit or lack of merit of the lawsuit. It has ordered that this message be transmitted to give as many persons as is practicable notice of this suit.

For details about your rights in this "Agent Orange" class action lawsuit, call 1-800-_____, or write to the Clerk of the United States District Court, Box ——, Smithtown, New York 11787. That address again is Clerk of the United States District Court, P.O. Box ——, Smithtown, New York 11787, or call 1-800-_____.

*Exhibit C (Newspaper and Magazine Notice)*

## TO ALL PERSONS WHO SERVED IN OR NEAR VIETNAM AS MEMBERS OF THE ARMED FORCES OF THE UNITED STATES, AUSTRALIA AND NEW ZEALAND FROM 1961-1972

If you or anyone in your family can claim injury, illness, disease, death or birth defect as a result of exposure to "Agent Orange" or any other herbicide while assigned in or near Vietnam at any time from 1961 to 1972, you are a member of a class in an action brought on your behalf in the United States District Court for the Eastern District of New York unless you take steps to exclude yourself from the class. The class is limited to those who were injured by exposure to "Agent Orange" or any other herbicide while serving in the armed forces in or near Vietnam at any time during 1961-1972. The class also includes members of families who claim derivative injuries such as those to spouses and children.

The court expresses no opinion as to the merit or lack of merit of the lawsuit.

For details about your rights in this "Agent Orange" class action lawsuit, call 1–800–———, or write to Clerk of the Court, Box —, Smithtown, New York 11787.

Robert C. Heinemann
Clerk, United States District
Court for the Eastern District
of New York

DATED: Brooklyn, New York
December , 1983