### In re ASBESTOS SCHOOL LITIGATION.

No. 83–0268.

United States District Court, E.D. Pennsylvania.

Sept. 28, 1984.

See also D.C., 594 F.Supp. 178.

David Berger, Herbert Newberg, Philadelphia, Pa., for plaintiffs.

Lawrence T. Hoyle, Jr., Philadelphia, Pa., for defendants—U.S. Gypsum Co., National Gypsum Co. and W.R. Grace & Co.

Ralph W. Brenner, Philadelphia, Pa., for defendants—Celotex Corp. & Carey Canada, Inc.

Gwendolyn H. Gregory, Alexandria, Va., for Nat. School Bds. Ass'n.

There are over 100 counsel of record in this matter. Listed are lead counsel.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, J.

Presently before the Court is plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek certification of a class of essentially all public school districts and private schools in the nation to recover the costs incurred in undertaking asbestos abatement remedial action. Class certification is sought under Rule 23(b)(1)(B), (b)(2) and (b)(3).

The initial complaints in these matters were filed on January 17, 1983, and March 23, 1983, respectively. The representative plaintiffs are four public school districts: the School District of Lancaster, the Manheim Township School District, and Lampeter-Strasburg School District, which reside in the Eastern District of Pennsylvania; and the School District of Barnwell,

South Carolina, which is found in the District of South Carolina.

The defendants in these companion actions are members of the asbestos industry. Asbestos products have been used in the construction of schools and other public buildings in the form of spray or trowel-applied coating material for building surfaces, including ceilings, as well as for insulation on pipes. and boilers. With the exception of Johns-Manville Corporation, against whom legal process is stayed because of the pending bankruptcy proceedings, the defendants represent, for the time period alleged in the complaints, all of the major producers of friable asbestos construction and insulation products of the type found in public and private schools throughout the nation, along with their principal suppliers of raw asbestos.

The complaints are grounded in state law, and federal jurisdiction is based upon 28 U.S.C. § 1332 (1982), diversity of citizenship jurisdiction.[1] The complaints allege liability on the basis of negligence, strict liability in tort, intentional tort, breach of warranty, concert of action and common law conspiracy. In addition to recovery of compensatory and punitive money damages, the complaints seek equitable relief in the form of restitution and mandatory injunctive relief involving asbestos abatement remedial action.

## I. FACTUAL BACKGROUND

This litigation was triggered by action of the United States Environmental Protection Agency ("EPA") and the Congress. In 1980, the EPA investigated the presence of asbestos in the nation's schools and determined that it constituted a serious hazard to the health of school children and school employees. As a result of the EPA's investigation and findings, the agency promulgated proposed regulations, pursuant to the Toxic Substances Control Act, 15 U.S.C. § 2605 (1982), requiring every public and private school in the country to test for the presence of asbestos. 40 C.F.R. §§ 763.100–.119 (1983).

At approximately the same time the EPA promulgated the above proposed regulations, Congress considered and enacted the Asbestos School Hazard Detection and Control Act of 1980, 20 U.S.C. §§ 3601–3611 (1982). Recognizing the financial hardship imposed by the EPA regulations, the legislature made provision for public and private schools to obtain interest-free loans to accomplish the testing mandated by the EPA and to help defray the costs of subsequent remedial action. However, because of political and budgetary considerations, Congress refrained from making any appropriations for carrying out asbestos abatement remedial action. Instead, Congress directed the United States Attorney General to investigate and report to Congress which parties should bear the ultimate financial and legal responsibility for school asbestos abatement remedial action.

In August, 1981, the Attorney General issued his report finding that important federal environmental policies mandated abatement of the school asbestos problem, and that the asbestos industry should be held responsible. Land and Natural Re-

---

1. Because this action is solely a diversity case, the Anchorage School District has challenged the standing of the named plaintiffs. It argues that these plaintiffs lack standing to assert claims on behalf of class members in jurisdictions other than their own. While this argument has some superficial appeal, upon closer analysis, it is apparent that standing requirements are satisfied. Standing, which derives from the article III case or controversy requirement, is met when the plaintiff can demonstrate "injury in fact." *Sierra Club v. Morton*, 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1365–66, 31 L.Ed.2d 636 (1972). To what extent that injury is legally cognizable under the laws of the various juris-

dictions is a separate inquiry. "Whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is not a standing issue, but depends rather on meeting the prerequisites of Rule...." 1 H. Newberg, *Newberg on Class Actions* § 1072a, at 124 (1977). Plaintiffs have demonstrated injury in fact and their injury is typical of injury sustained by all putative class members. That is all that is required under Fed.R.Civ.P. 23. *Cf. Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732–34 (3d Cir.1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971); *Plum Tree, Inc. v. Rouse Company, Inc.*, 58 F.R.D. 373, 375 (E.D.Pa.1972).

sources Div., U.S. Dep't of Justice, 97th Cong. 1st Sess., *The Attorney General's Asbestos Liability Report to Congress* iv–vii (Comm.Print 1981) ("Attorney General's Report") (Exhibit C, Plaintiffs' Memorandum in Support of Motion for Class Certification). The Attorney General's Report went on to conclude that no additional federal duty-imposing legislation was necessary and that schools could rely on existing state common law to recover from the industry. *Id.* After the issuance of the Attorney General's Report, this litigation ensued.

## II. PROCEDURAL BACKGROUND

Subsequent to the filing of the complaints in the four companion cases, plaintiffs moved, on March 30, 1984, for class certification. Shortly after, plaintiffs filed an additional motion for immediate class certification against certain defendants, including United States Gypsum Co., National Gypsum Company and W.R. Grace & Co. These three defendants agreed not to oppose a nationwide mandatory class certified under Rule 23(b)(1) and/or 23(b)(2).[2] The logic of these defendants' position was that it was far preferable for them to face one "global" action rather than to litigate thousands of individual cases. On April 13, 1984, this Court certified a mandatory class pursuant to Rules 23(b)(1)(B) and 23(b)(2) as against the three aforementioned defendants. The Order also enjoined the filing of any new complaints or the prosecution of any pending state or federal actions against the three non-opposing defendants. A hearing was set for May 11, 1984 at which time the Court permitted any party to appear and apply for relief from the April 13, 1984 Order.

As a result of the April 13 Order, the alignment of various parties to the litigation shifted. Rather than the usual "plaintiff(s) for" and "defendant(s) against" structure, the school asbestos case divided along the following lines:

1. *Plaintiffs Supporting Mandatory Class Action Certification.*

This group has, throughout these proceedings, argued for a nationwide mandatory class of plaintiff school districts.[3]

2. *Defendants Supporting Mandatory Class Action Certification.*

This group of three defendants, United States Gypsum Co., National Gypsum Company and W.R. Grace & Co., also referred to in papers and at oral argument as the nonopposing or stipulating defendants, likewise seeks to have a mandatory class certified.[4]

3. *Plaintiffs Opposing Mandatory Class Certification and Supporting an Opt-Out Class Pursuant to Rule 23(b)(3).*

This group's principal representative is the Barnwell School District of South Carolina,[5] one of the four named plaintiffs in

---

**2.** Certification under Rule 23(b)(1) and (b)(2) is mandatory in that those who meet the description of the class are not permitted to "opt out" of the class action. Certification under Rule 23(b)(3) is voluntary in that any putative class member is free to "opt out" of the class and commence independent litigation. *See Kyriazi v. Western Elec. Co.,* 647 F.2d 388, 393 (3d Cir.1981); *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 252–53 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Fox v. Prudent Resources Trust,* 69 F.R.D. 74, 77 (E.D.Pa.1975).

**3.** The spokesperson for this group is plaintiffs' co-lead counsel David Berger, Esquire. Mr. Berger has associated with, among other counsel, Professor Charles Alan Wright of the University of Texas. Professor Wright addressed the Court at a hearing held on July 30, 1984.

**4.** Lawrence T. Hoyle, Jr., Esquire, counsel to National Gypsum Company and defendants' co-liaison counsel, has acted on behalf of these defendants.

**5.** Barnwell School District is represented by the law firm of Blatt and Fales, Barnwell, SC. Having terminated David Berger as local counsel subsequent to the April 13th Order, Blatt and Fales associated with Herbert L. Newberg, Esquire, as local counsel. Mr. Newberg is the author of the multivolume treatise entitled *Newberg on Class Actions* (1977). Mr. Newberg was subsequently designated co-lead counsel by Order of the Court dated July 17, 1984. Blatt and

this case. This group is strongly opposed to the certification of a mandatory class under Rule 23(b)(1) or (b)(2), but does support an opt-out class pursuant to Rule 23(b)(3).

### 4. *Defendants Opposing Class Certification Under Any Provision of Rule 23.*

This group opposes any class certification whether mandatory or opt-out.[6]

Oral argument was held on a motion to vacate the April 13 Order on May 11, 1984. On July 16, 1984, the Court vacated its April 13th Order to the extent that the injunction restraining the prosecution of any case filed prior to April 13, 1984 was lifted.

On July 30, 1984 the Court heard oral argument on the merits of the class certification issue. At that time, the Court invited counsel to submit proposals on how a class could be structured so as to maximize the economies accruing to a class action while avoiding the pitfalls associated therewith. The Court further advised counsel that with that last submission, the "paper chase will have ended," Tr. at 9, and no further obstacle would remain to the decision of the case. It is to that decision I now turn.

## III. LEGAL DISCUSSION

■ In order for a suit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, the named plaintiffs must establish each of the four threshold requirements of Rule 23(a)[7]: numerosity, commonality, typicality, and adequacy of representation. *Wetzel v. Lib-*

erty Mutual Insurance Co., 508 F.2d at 246. These requirements are mandatory and failure to establish any one of the Rule 23(a) requirements is fatal to a motion for class action certification. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2373, 72 L.Ed.2d 740 (1982); *Alexander v. Gino's, Inc.*, 621 F.2d 71 (3d Cir.) (per curiam), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980); *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d at 246; *Katz v. Carte Blanche Corporation*, 496 F.2d 747, 756 (3d Cir.) (en banc), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *Paskel v. Heckler*, 99 F.R.D. 80, 83 (E.D.Pa.1983).

■ The named plaintiffs must then show that the action qualifies for class action treatment under at least one of the subsections of Rule 23(b).[8] *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d at 248. Plaintiffs argue that the proposed class meets the requirements and therefore may be maintained under subsections (b)(1)(B), (b)(2) and (b)(3) of Rule 23. In connection with this analysis, the burden of proof remains with the named plaintiffs to set forth sufficient factual information to enable the Court to reasonably permit the action to continue as a class under Rule 23. *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir.1974); *Ladele v. Consolidated Rail Corp.*, 95 F.R.D. 198, 200 (E.D.Pa.1982); *Ciarrochi v. Provident Nat. Bank*, 83 F.R.D. 357, 360 (E.D.Pa.1979).

■ Finally, it is well established that "the central issue raised in a motion for certification is whether a class action is appropriate, not the probability of plain-

---

Fales have also associated with Professor Arthur R. Miller of Harvard University. Professor Miller addressed the Court at the May 11, 1984 and July 30, 1984 hearings.

**6.** Ralph W. Brenner, Esquire, counsel to the Celotex Corporation and Carey Canada, Inc. and defendants' co-liaison counsel, represented the position of this group of defendants.

**7.** Rule 23(a) provides in pertinent part:
　(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued

as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**8.** For the text of Rule 23(b) *see* note 11 *infra.*

tiff's success on the merits of the substantive claims." *Chestnut Fleet Rentals, Inc. v. Hertz Corp.*, 72 F.R.D. 541, 543 (E.D.Pa. 1976) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974)); *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir.), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970).

Having carefully considered the arguments presented by counsel in both their oral and written presentations,[9] I have concluded that a class will be conditionally certified pursuant to Rule 23(b)(3). I have further concluded that a class will also be conditionally certified under Rule 23(b)(1)(B) on the limited issue of punitive damages.

### A. Rule 23(a)

#### 1. *Numerosity*

The first prerequisite of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). As to the numerosity requirement, no legitimate objection to certification can be made. There are approximately 36,000 public school districts and private elementary and secondary schools in the United States. U.S. Dep't of Educ., *Asbestos In the Schools, A Report to the Congress*, 20 (Sept. 15, 1983) (Exhibit J, Plaintiffs' Memorandum in Support of Motion for Class Certification). Of the 36,000 public school districts and private schools, the United States Department of Education estimates that friable asbestos is present in approximately 14,000 schools. *Id.* Plaintiffs estimate that approximately 8,500 public school districts and private schools manifest an asbestos abatement problem. Affidavit of David Berger ¶ 5

(Exhibit R, Plaintiffs' Memorandum in Support of Motion for Class Certification).

There is, of course, no geographical or numerical limit expressed by Rule 23(a)(1) itself, *see Mertz v. Harris*, 497 F.Supp. 1134, 1138 (S.D.Tex.1980); *Simon v. Westinghouse Elec. Corp.*, 73 F.R.D. 480, 483 (E.D.Pa.1977) (690,000 putative class members); *In re Penn Central Securities Litigation*, 62 F.R.D. 181, 189 (E.D.Pa.1974), nor is it necessary that the class representatives have precise knowledge of the exact number of members of the class for purposes of determining that joinder is impracticable. *Hedges Enterprises, Inc. v. Continental Group*, 81 F.R.D. 461, 464–65 (E.D. Pa.1979). It suffices that it be readily apparent—as is unmistakably the case here—that the size of the class makes joinder impracticable. *Piel v. National Semiconductor Corp.*, 86 F.R.D. 357, 365 (E.D.Pa. 1980).

#### 2. *Commonality*

■ Rule 23(a)(2), requires the existence of "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The requirement of commonality is aimed at determining whether there is a need for combined treatment and a benefit to be derived therefrom. The section has been liberally construed, and "those courts that have focused on Rule 23(a)(2) have given it a permissive application so that common questions have been found to exist in a wide range of contexts." 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1763, at 604 (1972). The "permissive application may undoubtedly be attributed to the premise ... that is, in doubtful cases, the Court should favor the certification of the class."

---

**9.** In his presentation to the Court on July 30, 1984, counsel for Barnwell School District, Herbert L. Newberg, Esquire, observed that "[b]oth sides have cut down many trees, in filing their class action briefs, motions, their exhibits.... If the class action is decided on the weight of the briefs filed, it would be a very close question, probably four gold medals to all of the adverse sides." Tr. at 88. While the Court does not wish to suggest that the scales of justice are to be applied literally, I do share Mr. Newberg's

assessment of the Olympian efforts contributed by counsel. The Court's role in deciding the difficult and important question before it has been greatly aided by the diligence, thoroughness and scholarship evidenced in the papers submitted and arguments presented. The Court wishes to express its special appreciation to Professor Miller whose views were particularly elucidating on the complex procedural issues raised by this class certification motion.

*Piel v. National Semiconductor Corp.,* 86 F.R.D. at 367; *Simon v. Westinghouse Elec. Corp.,* 73 F.R.D. at 487. Rule 23(a)(2) does not require that all issues in the litigation be common, only that common questions exist. *Hummel v. Brennan,* 83 F.R.D. 141, 145 (E.D.Pa.1979); *Kuhn v. Philadelphia Electric Co.,* 80 F.R.D. 681, 684 (E.D.Pa.1978). Indeed, a single common question is sufficient to satisfy Rule 23(a)(2). *Simon v. Westinghouse Elec. Corp.,* 73 F.R.D. at 484. Furthermore, not every question of law or fact must be common to each individual member of the class, *Hedges Enterprises, Inc. v. Continental Group,* 81 F.R.D. at 465; *Axelrod v. Saks & Co.,* 77 F.R.D. 441, 444 (E.D.Pa.1978); *Fox v. Prudent Resources Trust,* 69 F.R.D. at 78, nor is there a requirement that answers to common questions guarantee a determination of liability. *Payton v. Abbott Labs,* 83 F.R.D. 382, 387 (D.Mass.1979), *vacated* 100 F.R.D. 336 (1983).

■ A common question is one which arises from a "common nucleus of operative facts" regardless of whether "the underlying facts fluctuate over the class period and vary as to individual claimants." *Cohen v. Uniroyal, Inc.,* 77 F.R.D. 685, 690–91 (E.D.Pa.1977); *In re Corrugated Container Antitrust Litigation,* 80 F.R.D. 244, 250 (S.D.Tex.1978). *See also Muth v. Dechert, Price & Rhoads,* 70 F.R.D. 602, 607 (E.D.Pa.1976) (common course of conduct yields common questions). In mass tort actions, the requirement of common questions has been satisfied by a showing of commonality either as to liability, *Ouellette v. International Paper Co.,* 86 F.R.D. 476, 479 (D.Vt.1980); *Coburn v. 4–R Corp.,* 77 F.R.D. 43, 44 (E.D.Ky.1977), or as to the cause or impact of the tortious action, *In re Three Mile Island Litigation,* 87 F.R.D. 433, 439, (M.D.Pa.1980) (*"Three Mile Island"*).

Plaintiffs allege a number of claims involving both legal and equitable relief. The predicate of each claim is a violation of law, or breach of a legal duty, which, in conjunction with a showing of injury causally linked to defendants' wrongful conduct, creates liability to the members of the class. Although each claim is grounded in the breach of a separate, independent duty owed the individual members of the class, the underlying "common core of questions," *Cohen v. Uniroyal, Inc.,* 77 F.R.D. at 690, which plaintiffs contend make out a *prima facie* case of breach of a legal duty under the theories of liability specified in the complaint, are as follows:

(a) the general health hazards of asbestos;

(b) defendants' knowledge or reason to know of the health hazards of asbestos;

(c) defendants' failure to warn/test; and

(d) defendants' concert of action and/or conspiracy involving formation of and adherence to industry practices.

All of these elements can be established by common proof, which, although it may be complex, does not vary from class-member school to class-member school. Plaintiffs have demonstrated common questions sufficient to satisfy Rule 23(a)(2).

### 3. *Typicality*

■ Rule 23(a)(3) requires that "the claims ... of the representative parties" be "typical ... of the claims of the class." Fed.R.Civ.P. 23(a)(3). The indicia of this requirement are summarized in *Sley v. Jamaica Water & Util.,* 77 F.R.D. 391 (E.D. Pa.1977):

> The typicality requirement functions as a safeguard against interclass conflicts and an assurance that the plaintiff's interests are more or less co-extensive with those of the class. In other words, ... the class representative's claims must be typical in that his or her litigative posture must be sufficiently co-extensive with those of the class such that the class members' causes of action are fully, fairly and vigorously prosecuted.

*Id.* at 394 (citations omitted). *Accord Cohen v. Uniroyal, Inc.,* 77 F.R.D. at 691; *Sharp v. Coopers & Lybrand,* 70 F.R.D. 544, 548 (E.D.Pa.1976). As the court ob-

served in *General Telephone Co. of Southwest v. Falcon:*

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

457 U.S. at 157 n. 13, 102 S.Ct. at 2371 n. 13. *See also* 3B J. Moore, *Moore's Federal Practice,* ¶ 23.06–2 (2d ed. 1978) (the extent to which this requirement differs, if at all, from other requirements of Rule 23(a) is unclear).

▮▮▮▮ While the focus is on the relatedness of the named plaintiffs' claims and those of the class members, the harm suffered by the named plaintiffs may differ in degree from that suffered by other members of the class so long as the harm suffered is of the same type. *McQuilken v. A. & R. Development Corp.,* 576 F.Supp. 1023, 1029 (E.D.Pa.1983). "[C]laims [are considered] typical when the 'essence' of the allegations concerning liability, and not the particularities, suggest adequate representation of the interests of the proposed class members." *Peil v. Speiser,* 97 F.R.D. 657, 659 (E.D.Pa.1983) (quoting *Piel v. National Semiconductor Corp.,* 86 F.R.D. at 371). In addition, "a plaintiff's claim is typical if it arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Paskel v. Heckler,* 99 F.R.D. at 84 (citation omitted).

As previously demonstrated, the plaintiffs' claims raise issues harmonious with all class members as to the common issues of liability upon theories of negligence, strict liability, breach of warranty, intentional tort, concert of action and civil conspiracy. As a consequence, the named plaintiffs stand in a similar position as all other members of the class, in satisfaction of this subdivision.

### 4. *Adequacy of Representation*

▮▮▮▮ The final requirement of Rule 23(a)(4) is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). In *Wetzel v. Liberty Mutual Insurance Co.,* the Third Circuit identified the elements of adequacy of representation as follows: "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." 508 F.2d at 247 (citation omitted). *Accord Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir.), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). The burden is on the defendant to demonstrate that the representation will be inadequate. *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).

The named plaintiffs are represented by counsel who are very experienced with class action litigation and thoroughly familiar with property damage and mass disaster litigation.[10] Identical or similar evidence will be proffered by each plaintiff as to all of the fundamental liability issues in this action. Plaintiffs' interests are sufficiently aligned with those of the class members they seek to represent. Therefore, this element of Rule 23(a)(4) is satisfied as well.

### B. Rule 23(b)(3)

Rule 23(b)(3)[11] applies to class certification of actions primarily seeking money

---

**10.** *See* notes 3 & 5 *supra.* Indeed, the quality of all counsel associated with this case is a factor in the Court's determination that this case can be properly managed as required by Rule 23(b)(3)(D).

**11.** Rule 23(b) provides in relevant part:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

damages. Rule 23(b)(3) requires that (1) common questions of law or fact raised by the litigation in which class determination is being sought predominate over individual questions and (2) that class treatment. be superior to other procedures available for handling the damage claims in question. Fed.R.Civ.P. 23(b)(3).

In determining whether the relevant criteria of Rule 23(b)(3) have been met, the Third Circuit Court of Appeals has established the following guidelines:

> The predominance finding requires at a minimum the identification of the legal and factual issues, common and diverse, and an identification of the class members to which those relate.... The superiority finding requires at a minimum (1) an informed consideration of alternative available methods of adjudication of each issue, (2) a comparison of fairness to all whose interests may be involved between such alternative methods and a class action, and (3) a comparison of the efficiency of adjudication of each method.

*Katz v. Carte Blanche Corporation*, 496 F.2d at 756–57, *cited with approval in Bogosian v. Gulf Oil Corp.*, 561 F.2d at 448. Assuming that the analysis of these points is correct, the district court has broad discretion to grant or deny class certification. *Katz v. Carte Blanche Corporation*, 496 F.2d at 757; *Bogosian v. Gulf Oil Corp.*, 561 F.2d at 448.

### 1. Predominance

In assessing whether common questions predominate, most courts have adopted a pragmatic approach which emphasizes how efficient class treatment will be, the significance of the common questions, and whether class certification would result in the serious distortion of the lawsuit. 3B J. Moore, *Moore's Federal Practice* ¶ 23.45[2] (1978). Professors Wright and Miller state that when "common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." 7A C. Wright and A. Miller, *Federal Practice and Procedure*, § 1778, at 53 (1972). Several courts have found class certification to be appropriate "where common issues important to the litigation can be resolved on a class-wide basis even though the common issues may not be dispositive." *McQuilken v. A & R Development Corp.*, 576 F.Supp. at 1031.

■ This pragmatic approach is implicit in the analytical framework utilized in *Bogosian v. Gulf Oil Corp.* Under *Bogosian*, the determination of the appropriateness of class certification of damage claims under Rule 23(b)(3) involves a three-part analysis of the basic elements of civil damage claims. Those elements consist of: (1) violation of law; (2) fact of injury; and (3) damages. 561 F.2d at 449, 454–56. *See also In re Glassine and Greaseproof Paper Antitrust Litigation*, 88 F.R.D. 302, 306–07 (E.D.Pa.1980); *Hedges Enterprises, Inc. v. Continental Group*, 81 F.R.D. at 473–76. Restated in terms of recovery in tort, it is necessary to demonstrate breach of a legal duty; causation between the violation and injury to the plaintiff, including injury in fact and proximate cause; and

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for, the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

damages. These principles of analysis have been recognized in tort class certification decisions. *See, e.g., In re Agent Orange Product Liability Litigation*, 100 F.R.D. 718, 721–23 (E.D.N.Y.1983) ("*Agent Orange*"); *Three Mile Island*, 87 F.R.D. at 439–40.

The first element to be analyzed to determine whether common questions of law or fact predominate over individual ones pursuant to Rule 23(b)(3) is the alleged violations of law as to which class certification is sought. As discussed previously, the complaint alleges six claims for damages: negligence, strict liability, breach of warranty, intentional tort, concert of action and civil conspiracy.

These claims, as noted, arise out of the same common nucleus of operative facts relating to defendants' conduct and the nature of asbestos products. Common questions relating to the hazards of asbestos, the knowledge of the defendants of the hazards, industry policies and practices and defendants' failure to warn and to test are at the core of all the damage claims for relief, and will dominate other issues at trial, regardless of how defendants' conduct is characterized in terms of a specific tort.

The second element of the *Bogosian* analysis relevant to determining whether common questions of law or fact predominate over individual ones under Rule 23(b)(3) is the question "fact of injury" or "impact". The issue of impact, or as it is more commonly known, causation, focuses on the effects of the defendants' conduct on individual members of the class and may be proved on a classwide basis. The Third Circuit Court of Appeals has stated:

Since, as we have indicated, the second aspect of fact of damage is a simple concept of causation, any evidence which is logically probative of a loss attributable to the violation will advance plaintiff's case. There is absolutely no requirement that the loss be personal or unique to plaintiff, so long as the plaintiff has suffered loss in his business or property, for as we have noted, this sec-

ond aspect of fact of damage is not concerned with any policy of limiting liability. Thus, when [a] ... violation impacts upon a class of persons who do have standing, *there is no reason in doctrine why proof of the impact cannot be made on a common basis so long as the common proof adequately demonstrates some damage to each individual.*

*Bogosian v. Gulf Oil Corp.*, 561 F.2d at 454 (emphasis added).

In the instant case, defendants' alleged misconduct has had broad, pervasive effects on the school class. Plaintiffs allege that as a result of defendants' failure to warn the nation's elementary and secondary schools of the hazards of asbestos and asbestos-containing products, the school class installed large quantities of friable asbestos material in school buildings. Because of the alleged grave health hazard posed by asbestos, schools have undertaken asbestos abatement remedial action to eliminate the hazard and have incurred enormous financial costs as a result. Thus, plaintiffs' proposed proof of impact under the above formulation, that is, demonstration of a general effect in the form of the creation of the hazard and specific proof of expenditures, falls within the *Bogosian* guidelines.

The second element of causation, proximate or legal cause raises primarily a question of law relating to the ambit or scope of legal liability under the law of torts. W. Prosser, *Law of Torts*, § 42, at 244 (4th ed. 1971). This legal issue can be resolved on a classwide basis without involving individualized, class-member by class-member proof.

▪ Finally, "the 'overwhelming weight of authority' holds that the need for individual damages calculations does not diminish the appropriateness of class action certification where common questions as to liability predominate." *Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 176 (E.D.Pa. 1979) (quoting 5 H. Newberg, *Newberg on Class Actions* § 8824(b), at 879 (1977)).

## 2. *Superiority*

The concept of superiority essentially involves a value judgment which takes into account a number of competing interests. As the Third Circuit stated in *Katz v. Carte Blanche Corporation:*

> Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large and (6) of the defendant. The listing is not necessarily in order of importance of the respective interests. Superiority must also be looked at from the point of view of the issues.

496 F.2d at 760.

In my view, the school asbestos litigation is uniquely suitable to class action treatment. The bench, bar and public at large are only too well aware of the staggering costs that the asbestos personal injury litigation has generated. Clearly, classwide disposition of at least some of the issues in this litigation, instead of case-by-case adjudication, would realize great savings in litigation costs. Instead of hundreds or thousands of school asbestos cases in separate forums, the litigation would be concentrated in a single forum, thereby economizing litigation expenses. Moreover, there would be one set of attorneys for both sides resulting in significant savings in attorneys' fees. In this case, "with the presence of a common core which predominates, considerations of judicial efficiency and economy, overall expense and uniformity will be furthered by permitting this case to proceed as a class action." *Sharp v. Coopers & Lybrand,* 70 F.R.D. at 548.

While the Advisory Committee Notes caution against certifying mass tort cases under Rule 23(b)(3), 39 F.R.D. 69, 103 (1966), this case involves a mass tort relating to property damage rather than personal injury. *McQuilken v. A & R Development Corp.,* 576 F.Supp. at 1032. Hence, many of the jurisprudential considerations, such as an injured plaintiff's right to choose his or her forum and to choose his or her counsel, as well as the unique characteristics of causation and injury which have led courts to hesitate to certify mass tort cases, *In re Northern Dist. of Cal., Dalkon Shield, etc.,* 693 F.2d 847, 852–54 (9th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983) (citing cases) (*"Dalkon Shield"*); *Delaney v. Borden, Inc.,* 99 F.R.D. 44, 44–45 (E.D.Pa. 1983); *Sanders v. Tailored Chemical Corp.,* 570 F.Supp. 1543, 1543 (E.D.Pa. 1983), are not present in this case. *See* 7A C. Wright and A. Miller, *Federal Practice and Procedure,* § 1783, at 115–16 (1972).

## 3. 23(b)(3)(A–D)

Having carefully considered the factors which are set forth in Fed.R.Civ.P. 23(b)(3)(A–D), I am convinced that the certification of a class under Rule 23(b)(3) is appropriate in this case.[12]

The disposition of this litigation under a Rule 23(b)(3) class allows those school districts who wish to pursue individual actions to do so. Many of the larger school districts, such as Los Angeles and Chicago, have a significant interest in pursuing their own actions. However, many more thousands of districts will be benefited by being relieved of the onerous burden of bringing a complex action which could consume in costs more than the recovery anticipated.

To date, there are approximately 50 cases filed in state and federal courts. Only one has proceeded to judgment. Thus, the certification of this action comes at a time when the vast majority of the class members can make a meaningful decision to participate or to opt out.

---

**12.** Rule 23(b)(3)(A–D) provides in relevant part: The matters pertinent to the findings [of predominance and superiority] include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Whether the Eastern District of Pennsylvania offers any unique advantage as a forum for litigating this case is problematical. However, if this case is to be litigated as a nationwide class, no other forum has any special advantage which augers for litigating elsewhere.

One matter, bearing on the manageability of this litigation, which defendants raise in opposition to any type of class certification, is the applicability of the state law of 54 jurisdictions. At first blush, this aspect of the litigation would seemingly prevent nationwide class certification. *See Brummett v. Skyline Corp.*, No. C 81–0103(B), slip op. at 9–10 (W.D.Ky. April 11, 1984); *Harrigan v. United States*, 63 F.R.D. 402, 405 (E.D.Pa.1974). However, on further reflection, the problem is not nearly so complex. First, there is substantial duplication among the various jurisdictions as to the applicable law. For example, as to negligence, 51 jurisdictions are in virtual agreement in that they apply the Restatement (Second) of Torts § 388. As to strict liability, the basic test is Restatement (Second) of Torts § 402(A) that one who sells a product in a defective condition unreasonably dangerous to the user is liable. Forty-seven jurisdictions have adopted strict liability theories and all of them start with the concept of a defective product. In addition, plaintiffs have represented that they will direct discovery and trial briefs to meet the most stringent tests of liability. Finally, as the need arises, subclasses can be created to account for variances pursuant to Rule 23(c)(4).[13] *Fox v. Prudent Resources Trust*, 69 F.R.D. at 77.

This is not to suggest that I believe that managing this litigation is wholly without difficulty, as it most assuredly is not. But, at this point, I believe that the management problems can be overcome.[14] Notwithstanding the difficulty, "the proposed class action appears superior to the only existing alternative, which is repetitive individual litigation." *Wolgin v. Magic Marker Corp.*, 82 F.R.D. at 179.

## C. Rule 23(b)(1)(B)

██ Plaintiffs contend that this action meets the requirements of a Rule 23(b)(1)(B) mandatory class under the so-called "limited fund" standard. Plaintiffs' argument in this regard consists of two strands. On the one hand, plaintiffs argue that due to the costs involved in meeting potential claims, defendants' assets may be exhausted before all claimants could be compensated.[15]

On the other hand, plaintiffs assert that there is a substantial possibility that early awards of punitive damages will impair or impede the ability of future claimants to obtain punitive damages. Under this theory, it is not the total assets of the defendants that places a limitation on future plaintiffs' ability to obtain awards of such damages; rather, it is the very real possibility that subsequent plaintiffs will find themselves in litigation in which defendants "will have been found [by the courts] to have been sufficiently punished," Williams, J., *Mass Tort Class Actions: Going, Going, Gone?*, 98 F.R.D. 323, 333 ("*Mass Tort Class Actions*"), such that further awards of punitive damages would only result in "overkill". *See Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 839 (2d Cir.1967).

Two circuit courts which have considered Rule 23(b)(1)(B) certification in the context of mass torts have rejected it. In *Dalkon Shield*, the Ninth Circuit, while not specifically foreclosing the possibility of a (b)(1)(B) class, nonetheless held that

---

**13.** Rule 23(c)(4) provides in relevant part:

 (4) When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

**14.** *See* note 10 *supra.*

**15.** While plaintiffs have advanced this argument, they have not seriously pursued it, hence the Court declines to address it on the merits. In addition, no substantive evidence is before the Court which demonstrates that the combined assets of the defendants would be insufficient to meet the plaintiffs' claims.

(b)(1)(B) certification is proper only when "separate punitive damages claims *necessarily* will affect later claims." 693 F.2d at 852 (emphasis added). The Eighth Circuit, in *In re Federal Skywalk Cases,* 680 F.2d 1175 (8th Cir.1982), *cert. denied,* 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1982) ("*Skywalk*"), concluded that certification under (b)(1)(B) enjoined pending state proceedings and therefore violated the Anti-Injunction Act, 28 U.S.C. § 2283 (1982).[16] The court rejected the argument that a limited punitive damages fund brought the class within the "in aid of [the court's] jurisdiction" exception to the Anti-Injunction Act. *Skywalk,* 680 F.2d at 1182. The court stated that, "the class has an uncertain claim for punitive damages against defendants who have not conceded liability. The claim does not qualify as a limited fund...." *Id.*

The most recent analysis of (b)(1)(B) certification is contained in Chief Judge Jack Weinstein's opinion in *Agent Orange.* In formulating a standard against which to evaluate limited fund class certifications, Judge Weinstein adopted a "substantial probability" criteria, i.e., "less than a preponderance but more than a mere possibility." *Agent Orange,* 100 F.R.D. at 726. Applying this standard, Judge Weinstein concluded that the amount of compensatory damages and punitive damages, if allowed, would not exceed defendants' assets.

Having so found, Judge Weinstein nonetheless went on to conclude that a limited fund mandatory class should be established on the issue of punitive damages. Judge Weinstein reasoned as follows:

> [T]here is a substantial probability that limited punitive damages may be allowed. If they are, it would be equitable to share this portion of the possible award among all plaintiffs who ultimately recover compensatory damages. Yet, if no class is certified under Rule (b)(1)(B), non-class members who opt out

under Rule 23(b)(3) would conceivably receive all of the punitive damages or, if their cases are not completed first, none at all.

It is axiomatic that the purpose of punitive damages is not to compensate plaintiffs for their injury, but to punish defendants for their wrongdoing. In theory, therefore, when a plaintiff recovers punitive damages against a defendant, that represents a finding by the jury that the defendant was sufficiently punished for the wrongful conduct. There must, therefore, be some limit, either as a matter of policy or as a matter of due process, to the amount of times defendants may be punished for a single transaction.... There is, therefore, a substantial probability that 'adjudication with respect to individual members of the class ... would as a practical matter be dispositive of the interests of the other members not parties to the adjudication.'

*Id.* at 728 (citations omitted).

Judge Weinstein's analysis of Rule 23(b)(1)(B) certification substantially comports with Judge Heaney's dissenting opinion in *Skywalk* which states in relevant part:

> Apart from the defendants' capacity to pay punitive damages, there is surely some limit imposed by law on the amount for which they can be held liable for a single wrongful act or course of conduct. Unlimited multiple punishment for the same act determined in a succession of individual lawsuits and bearing no relation to the defendants' culpability or the actual injuries suffered by victims, would violate the sense of 'fundamental fairness' that is essential to constitutional due process.

680 F.2d at 1188 (citations omitted) (Heaney, J., dissenting). Judge Heaney's opinion goes on to conclude that "[t]he justifications for imposing punitive damages in-

---

**16.** The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment." 28 U.S.C. § 2283.

clude expréssing society's disapproval of outrageous conduct, deterring such conduct in the future, and providing incentives for private civil enforcement. Each of these purposes is advanced by the district court's class certification here. Thus, a class-wide calculation of punitive damages would be proper." *Id.* at 1190 (citations omitted) (Heaney, J., dissenting).

While the issue concerning the Anti-Injunction Act did not arise in *Agent Orange, see* 100 F.R.D. at 726, it was, as noted previously, the *ratio decidendi* of the *Skywalk* opinion. With due deference to the other members of the panel, I find Judge Heaney's discussion, in his dissent, of the interaction between a mandatory punitive damages class under Rule 23(b)(1)(B) and the requirements of the Anti-Injunction Act to be the better view. As Judge Heaney states:

> A mandatory class action, of course, has a restrictive effect on related proceedings in any other court—state or federal. This is because, by definition, members of such a class cannot pursue independent litigation of class claims....
>
> Here, the necessary restrictive effects of the mandatory class action are twofold. The first restrictive effect is that class members would not be able to pursue a punitive damage claim in an independent action. Such a restriction is absolutely necessary to the district court's jurisdiction over this class issue due to the applicable state law on punitive damages.

680 F.2d at 1191–92 (citations omitted) (Heaney, J., dissenting).[17]

In addition to their reliance on the decisions of the Eighth and Ninth Circuit Courts of Appeal, parties to this litigation have also raised constitutional and policy considerations in opposition to a mandatory class. First, it is argued that this Court is bound, under *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), by the decision of the Supreme Court of Pennsylvania in *Klemow v. Time, Incorpo-*

*rated,* 466 Pa. 189, 352 A.2d 12, *cert. denied,* 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976). In *Klemow,* a consumer class action involving non-resident plaintiffs, the Pennsylvania Supreme Court stated: "Because the jurisdiction of the courts of the Commonwealth is territorially limited, the class may consist only of Pennsylvania residents. The class may also include non-residents who submit themselves to the jurisdiction of the state courts." *Id.* 466 Pa. at 197, n. 15, 352 A.2d at 16 n. 15 (citations omitted). *See also Note, Multistate Plaintiff Class Actions: Jurisdiction and Certification,* 92 Harv.L.Rev. 718 (1979).

Defendants conclude that since Pennsylvania does not purport to assert jurisdiction over non-residents in a mandatory class, the federal court is, therefore, precluded from doing so. Apart from the fact that the parties cite no case decided on the basis of *Erie* and *Klemow,* their argument fails to account for the Supreme Court's holding in *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). In *Hanna,* the issue was whether the Massachusetts service of process rule would be applied rather than Fed.R.Civ.P. 4(d)(1). The Court stated:

> [Defendant] ... suggests that the *Erie* doctrine acts as a check on the Federal Rules of Civil Procedure, that despite the clear command of Rule 4(d)(1), *Erie* and its progeny demand the application of the Massachusetts rule. Reduced to essentials, the argument is: (1) *Erie,* as refined in [*Guaranty Trust Co. of New York v.] York,* [326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)], demands that federal courts apply state law whenever application of federal law in its stead will alter the outcome of the case. (2) In this case, a determination that the Massachusetts service requirements obtain will result in immediate victory for respondent. If, on the other hand, it should be held that Rule 4(d)(1) is applicable, the litigation will continue, with possible victory for petitioner. (3) There-

---

**17.** Under the applicable law of Missouri, it was unclear whether state law permitted more than one award of punitive damages. *Skywalk,* 680 F.2d at 1187.

fore, *Erie* demands application of the Massachusetts rule. The syllogism possesses an appealing simplicity, but is for several reasons invalid.

*Id.* at 466, 85 S.Ct. at 1141. *See also Rees v. Mosaic Technologies, Inc.*, 742 F.2d 765 at 767 (3d Cir.1984).

The *Hanna* Court refused to apply the *Erie* "outcome determinative" test, noting that the fundamental flaw in the defendant's "syllogism" was "the incorrect assumption that the rule of *Erie R. Co. v. Tompkins* constitutes the appropriate test of the validity and therefore the applicability of a Federal Rule of Civil Procedure". 380 U.S. at 469–70, 85 S.Ct. at 1142–43. Rather, in situations involving the Federal Rules, the appropriate inquiry is as follows:

> When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided *Erie* choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.

*Id.* at 471, 85 S.Ct. at 1144. Hence, it is standard practice for federal courts, pursuant to Rule 23, to exercise jurisdiction over national class actions. *See, e.g., Zeffiro v. First Pa. Banking & Trust Co.*, 96 F.R.D. 567 (E.D.Pa.1983).

In addition to the *Erie* argument, various parties maintain that a mandatory class raises concerns related to the tenth amendment.[18] The thrust of the argument is that the management of the public schools is at the heart of the police powers traditionally committed to local control. *Wisconsin v. Yoder*, 406 U.S. 205, 213, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972), and is, therefore, beyond the purview of the federal courts.

It, of course, goes without saying that a federal court should be extremely circum-

spect when the facts of the case before it arguably implicate the tenth amendment. However, in the present case, I have concluded that the prohibited line has not been crossed. Firstly, the tenth amendment concern, as expressed in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), has been considerably undermined by more recent cases such as *Hodel v. Virginia Surface Mining and Reclamation Ass'n, Inc.*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) and *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). Secondly, the intrusion upon the interests of the school districts are minimal. Only the punitive damages issue will be conducted pursuant to a mandatory class. Lastly, the federal interest inherent in asbestos abatement is apparent from the nationwide scope of the problem and the actions that Congress has taken with respect thereto.

It is apparent that there is a substantial possibility that early awards of punitive damages in individual cases will impair or impede the ability of future claimants to obtain punitive damages. The reality of such impairment has been recognized by commentators and courts. *See* Wright, *The Successful Use of the Class Action Device*, 52 UMKC L.Rev. 141, 144–45 (1984); Seltzer, *Mass Tort Punitive Damages*, 52 Fordham L.Rev. 37, 61, 72–73 (1983); Note, *Mass Accident Class Actions*, 96 Harv.L.Rev. 1143, 1157 (1983); *Mass Tort Class Actions*, 98 F.R.D. at 333 (1983); *Restatement (Second) of Torts*, § 908, comment e, at 467 (1979). *See also Acosta v. Honda Motor Co., Ltd.*, 717 F.2d 828, 838 (3d Cir.1983); *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d at 839; *Agent Orange*, 100 F.R.D. at 725; *In re Related Asbestos Cases*, 566 F.Supp. 818, 822 (N.D.Ca.1983); *Rosener v. Sears Roebuck & Co.*, 110 Cal.App.3d 740, 758–59, 168 Cal.Rptr. 237 (1980).

"A fundamental aspect of justice is parity of treatment. Persons similarly situated

---

18. The tenth amendment provides that: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.

and aggrieved should be similarly treated." *Payton v. Abbott Labs*, 83 F.R.D. at 390. While the ability of the courts to deal with social problems of great magnitude is not unlimited, "it has been the tradition of the common law to adapt." *Id.* An observation made by another district court in certifying a (b)(1)(B) limited fund class seems particularly apropos in the present case: "Faced with contradictory nonbinding authority, a court must select that course of action which appears at the time to better assure equality of treatment for all litigants." *Coburn v. 4–R Corp.*, 77 F.R.D. at 46.

While the question is not without difficulty, I conclude that a mandatory class on the issue of punitive damages should be conditionally certified under Rule 23(b)(1)(B). In so doing, I adopt the suggestion of Judge Heaney in *Skywalk* that any litigant who chooses to opt out of the Rule 23(b)(3) class will be permitted to settle punitive damage claims, and that the defendants will receive credit for any such settlements when and if there is a class-wide award of punitive damages. 680 F.2d at 1184–85 (Heaney, J., dissenting). Bearing in mind that no plaintiff has a legal right to punitive damages, the arrangement herein outlined would appear to be the least intrusive means of assuring fairness and equity to all parties.

### D. Rule 23(b)(2)

Fed.R.Civ.P. 23(b)(2) provides that: "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The complaints request two types of equitable relief: (1) mandatory injunctive relief in the form of asbestos abatement remedial action, and (2) restitution for expenditures already incurred by schools to remedy asbestos hazards.

Three forms of mandatory injunctive relief are requested. First, the complaints seek direct abatement action, including any necessary testing, inspection, analysis, removal of friable asbestos, and containment and/or replacement action warranted under the circumstances. Second, where containment action has already been taken by the schools, plaintiffs seek containment monitoring services consisting of maintenance of contained asbestos materials which remain in the schools under appropriate abatement practices. Third, the complaints seek medical detection/surveillance and monitoring services to identify and monitor children and school employees who may have been exposed to school asbestos.

In addition, plaintiffs seek equitable restitution for the costs of asbestos abatement remedial action already undertaken. They seek reimbursement under this theory for the monies expended performing a duty which they claim was the responsibility of the defendants.

Despite the ingenuity of plaintiffs' claims for equitable remedies, this case remains at bottom, one for legal damages. The Advisory Committee Notes to Rule 23(b) states that "[t]he [ (b)(2) ] subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." 39 F.R.D. at 102.

Plaintiffs' attempt to sidestep this requirement of Rule 23(b)(2) by casting their prayer for relief as restitution rather than money damages. The difference between the two remedies may be summarized as follows:

> The damages recovery is to compensate the plaintiff, and it pays him, theoretically, for his losses. The restitution claim, on the other hand, is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep.

D. Dobbs, *Remedies*, § 4.1, at 224 (1973).

The plaintiffs' argument that a request for a payment of future remedial expenses is equitable in nature has been rejected by the Court of Appeals for the Third Circuit. "A plaintiff cannot transform a claim for damages into an equitable action simply by asking for an injunction

that orders the payment of money." *Jaffee v. United States*, 592 F.2d 712, 715 (3d Cir.) (citations omitted), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). *Accord Three Mile Island*, 87 F.R.D. at 442.

 Whether some type of equitable relief may be required in specific cases cannot at this stage of the litigation be clearly ascertained. It is, however, well settled that certification under 23(b)(3) does not preclude the granting of appropriate equitable relief. 7A C. Wright and A. Miller, *Federal Practice and Procedure*, § 1784, at 127 (1972) ("a federal court should [be] free to experiment in awarding relief under Rule 23. It has the tools to shape the remedy to meet the exigencies of each case...."). However, the incidental need for limited equitable remedies cannot sustain certification under Rule 23(b)(2). *In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322, 343 (E.D.Pa.1976). *Cf. Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d at 253 (employment discrimination class action certifiable under (b)(2) and (b)(3) should be certified as (b)(2)); *Connor v. Highway Truck Drivers & Helpers*, 68 F.R.D. 370, 375 (E.D.Pa.1975) (monetary relief incidental to equitable relief).

E. Class Notice

 The final consideration for the Court concerns the subject of notice to the class. Fed.R.Civ.P. 23(c)(2) provides:

> (2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each members that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

In the present case, the best notice practicable would be obtained by a first class mailing. *See Piel v. National Semiconductor Corp.*, 86 F.R.D. at 375. The school districts and private school members of the class may be readily identified via the resources of national and state school board associations. In addition to noticing the school boards, appropriate notice should be provided in trade journals as well as periodicals of general distribution. Clearly, the public at large has a substantial interest in whether or not the school boards opt out of the 23(b)(3) class as well as in the progress of the litigation concerning the punitive damage claims. The cost of notice will be borne by the plaintiffs.

An appropriate Order follows.