Marie KUHN, Dorothy Kpuferschmidt, Marie L. Lepping, Janet McClarren

v.

**PHILADELPHIA ELECTRIC COMPANY.**

Civ. A. No. 77–1107.

United States District Court, E. D. Pennsylvania.

Nov. 16, 1978.

Philip Fuoco, Philadelphia, Pa., for plaintiffs.

Robert W. Maris, John F. Smith, II, Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiffs in this action, four female employees of Philadelphia Electric Company ("PECO"), brought this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Until approximately June 2, 1974, plaintiffs were exempt employees in the Home Service section of PECO's Division Accounts Department. Plaintiffs allege that on June 2, 1974, they were demoted to non-exempt clerical positions in the Customer Service Department. On November 22, 1974, they filed complaints with the Equal Employment Opportunity Commission ("EEOC") which, after deferral to the state agency and investigation, issued a determination of reasonable cause in Novem-

ber, 1975. Following unsuccessful attempts at conciliation, the EEOC issued right to sue letters to the plaintiffs in January and February, 1977.

Plaintiffs' complaint alleges sweeping across the board sex discrimination by PECO: "Defendant [PECO] maintains a practice of discriminating on the basis of gender in hiring, promotion, salaries, and other terms and conditions of employment, to the detriment of females." Complaint ¶ 5. Plaintiffs specifically allege that they were paid lower salaries than males performing comparable work, that they were denied opportunities for training and advancement, and that PECO's method of filling job openings "effectively precluded" them from applying for better positions. Complaint ¶¶ 22, 23.

Plaintiffs seek to represent a class that they define as "all females who at any time since January 26, 1974 are or have been: (1) employees of PECO, (2) potential employees of PECO in that (a) they have applied for employment, (b) will apply for employment." Plaintiffs' Supplemental Memorandum at 12. Defendant PECO opposes plaintiffs' motion on several grounds. First of all, PECO contends that class representation is unnecessary in light of a consent decree filed September 21, 1973, in *United States v. Philadelphia Electric Co.*, C.A. No. 72–1483 (E.D.Pa., Bechtle, J.). That decree provided, *inter alia*, that "defendants and their officers, agents, employees, members, successors in interest, and all persons in active concert or participating with them are permanently enjoined from engaging in any act or practice which has the purpose or effect of discriminating against any individual because of his or her . . . race, national origin, or sex, . . ." Consent Decree at 2. PECO argues that although the consent decree preserves the right of individuals to pursue individual claims, it renders class action treatment inappropriate. PECO cites in particular the dangers of conflicting obligations, duplicative proceedings, and the disincentive for employers to enter into consent decrees that may result if this suit is permitted to be maintained as a class action. In addition, PECO states that plaintiffs have not met their burden of demonstrating that the requirements of Federal Rule of Civil Procedure (Fed.R.Civ.P.) 23(a)(2), (a)(3), (a)(4), and (b)(2) have been met.

For the reasons discussed *infra*, plaintiffs' motion that this case be permitted to proceed as a class action will be granted. The class that plaintiffs may represent will be defined as follows: (a) all females who have been employed by defendant Philadelphia Electric Company at any time since January 26, 1974, and who were neither parties to, nor in privity with parties to, the consent decree entered on September 21, 1973, in *United States v. Philadelphia Electric Co.*, C.A. No. 72–1483 (E.D.Pa.) and (b) all females who have applied for employment with Philadelphia Electric Company since January 26, 1974, or who will apply in the future, and who were neither parties to, nor in privity with parties to, the consent decree entered on September 21, 1973, in *United States v. Philadelphia Electric Co.*, *supra*.

*The Requirements of Rule 23(a)*

In order for a case to be maintained as a class action, the mandatory requirements of Rule 23(a) must be met. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 246 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). The burden of showing that these requirements have been satisfied is, of course, on the party desiring to utilize the class action mechanism. 3B Moore's Federal Practice ¶ 23.02–2, at 23–96 (2d ed. 1978). Rule 23(a) requires plaintiffs to show that:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

(1) *Numerosity*

PECO has not seriously contested plaintiffs' contention that, if the class were to be

maintained along lines similar to those proposed by plaintiffs, the numerosity requirement would be satisfied.[1] Plaintiffs have met their burden here.

#### (2) *Common Questions*

■ We note initially that Rule 23(a)(2) "does not require that *all* questions of fact and law be common." 3B Moore's Federal Practice ¶ 23.06–1, at 23–173 (2d ed. 1978) (emphasis in original). Nor does it require that common questions predominate. *Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n*, 66 F.R.D. 581, 586 (E.D.Pa. 1975). This subdivision requires only that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2).

■ The factors which a court should consider when determining if the alleged facts support an allegation of company-wide discrimination were discussed by Judge Lord in *Hannigan v. Aydin Corp.*, 76 F.R.D. 502 (E.D.Pa.1977). As stated in *Webb v. Westinghouse Electric Corp.*, 78 F.R.D. 645, 650 (E.D.Pa.1978), "across the board analysis might apply to a grievance of generalized discrimination where the plaintiff could present some evidence of centralized control over employment practices." We believe that plaintiffs' allegations of across the board discrimination, coupled with the showing of centralized control that they have made, suffice to meet their burden of showing commonality. *Cf. Black Grievance Committee v. Philadelphia Electric Company*, 79 F.R.D. 98, 107–08 & n. 10 (E.D. Pa. 1978).

We do not believe that the presence of a prior consent decree precludes a finding of common questions. This point was, of necessity, decided *sub silentio* by Judge Bechtle in *Black Grievance Committee*, in which he found that common questions existed, notwithstanding the existence of the consent decree. We make a similar finding in this case.

#### (3) *Typicality*

■ PECO has stated that "[i]n this case the four individual plaintiffs all allege a single grievance relating to their transfer from a single section of the Company—the Home Service section of the Division Accounts Department." Defendant's Memorandum at 12. PECO has also submitted an affidavit to demonstrate the "unique factual circumstances" surrounding plaintiffs' transfer. The thrust of PECO's argument is that the uniqueness of plaintiffs' situation prevents their satisfying the typicality requirements of Rule 23(a)(3). This argument overlooks the other aspects of discrimination alleged in the complaint: unequal pay for comparable work; unequal availability of training; a discriminatory selection process. Although we may not now consider the eventual merits of these charges, we believe that they evidence a sufficient nexus between the claims of the plaintiffs and those of the class to enable plaintiffs to meet the requisite showing of typicality. *See Hannigan v. Aydin Corp., supra*, at 508.

#### (4) *Adequacy of Representation*

■ The Third Circuit recently summarized the two concerns embodied in this subsection: "that the representatives and their attorneys will competently, responsibly and vigorously prosecute the suit, and that the relationship of the representative parties' interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). Plaintiffs' counsel are thoroughly competent to prosecute this suit vigorously as a class action. We also believe that the plaintiffs themselves are well-qualified to represent this class. They have shown an interest in the case by filing complaints with the EEOC and, when that avenue

---

1. Defendant suggested that if a class action was to be maintained, and if the class was limited along the lines it suggested, a numerosity problem might arise. Since we do not limit the class in the way PECO urged, we are convinced that plaintiffs have met their burden on numerosity.

proved unproductive, by initiating the instant action. Their insight as non-exempt employees, coupled with their experience as exempt employees, will enable them to assist their counsel in preparing and proving their case. We believe that this broader exposure that the plaintiffs have experienced during their tenure at PECO distinguishes this case from *Webb v. Westinghouse Electric Corp., supra,* in which the plaintiffs' experience included only production and maintenance work, requiring the class to be similarly limited.

■ A potential antagonism of interests prevents us from allowing the class to be maintained in the precise manner sought by plaintiffs. Although they seek to represent all women who have been employees of PECO since January 26, 1974, none of the named plaintiffs was a party to, nor in privity with parties to, the consent decree. This factor led Judge Bechtle in *Black Grievance Committee v. Philadelphia Electric Co., supra,* to fashion two subclasses, one represented by plaintiffs not parties to the prior consent decree, and one represented by parties. Because the plaintiffs in this case were neither parties to that consent decree nor named in any of its appendices, they are not adequate representatives of those employees who were. Women who were parties to the earlier decree will therefore not be members of the class in this case. We do not believe that there is substance to any other potential antagonism that requires limiting the class further. If no antagonistic interests appear, both former and future employees may be included in the class. *Wetzel v. Liberty Mutual Insurance Co., supra,* at 253–54. Additionally, unless the retroactive seniority that could be awarded to job applicants could work to deprive the named plaintiffs of seniority, no antagonism arises that prevents the plaintiffs from representing job applicants. Since all of the named plaintiffs were PECO employees well before January 26, 1974, that danger is not present in this case.

*See Webb v. Westinghouse Electric Corp., supra.* The date of January 26, 1974, which is 300 days prior to the date on which plaintiffs filed with the EEOC, is the temporal limit of the class' Title VII claims. *See id.* at 653.

*Effect of the Consent Decree*

■ Although we have rejected PECO's contention that the consent decree in *United States v. Philadelphia Electric Co., supra,* prevents plaintiffs from meeting their burden under Rule 23(a)(2), we believe that the prudential reasons for denying the class action motion that PECO raises require separate attention. We are aware that some courts have relied upon the existence of a consent decree to deny plaintiffs' Rule 23 motions. *See, e. g., Walker v. Southwestern Bell Telephone Co.,* CA–3–75–0091–C, (N.D.Tex., April 7, 1978); *Peals v. Southwestern Bell Telephone Co.,* No. 76–68–C5 (D.Kan., Dec. 5, 1977); *Butera v. Mountain States Telephone & Telegraph Co.,* C.A. Nos. 76–F–261, 76–F–896 (D.Col., July 26, 1977). But, as the court in *Butera v. Mountain States Telephone & Telegraph Co., supra,* noted, even as it denied the motion to maintain the suit as a class action, "a class action is not necessarily barred . . . by a prior Consent Decree." Slip op. at 4. In this case we put particular stock in the opinion of Judge Bechtle who allowed a class action to be maintained in the face of the same consent decree that PECO raises as a bar in this case: "We hold that those plaintiffs who were neither parties to, nor in privity with parties to, the consent decree are not barred from requesting all relief, on behalf of themselves and *all others similarly situated,* to which they are entitled under the claims alleged in their complaint." *Black Grievance Committee v. Philadelphia Electric Co., supra* at 104 (emphasis supplied).[2]

■ We believe that Judge Bechtle's opinion supports our decision that collateral estoppel does not bar a class action in this

---

**2.** Defendant does not contend that individual suits are in any way barred by the consent decree.

case. We are also convinced that PECO's arguments based on duplication and possibly conflicting obligations do not justify denying plaintiffs' motion. It cannot be said that a class action is an unnecessary duplication if additional relief is ordered. It is possible that, if plaintiffs prevail on the merits, appropriate relief might include an affirmative action recruitment program for women similar to the one provided in the consent decree for blacks and Spanish-surnamed persons. Consent Decree at 8. It is also possible that the posting requirement for entry level positions in all departments should be expanded to include posting of other positions. We mention these possibilities only to show that it cannot be determined at this point that this suit, if maintained as a class action, would be an unnecessary duplication of the consent decree. Although we share PECO's concern for the possibility of conflicting obligations, we believe that, if plaintiffs prevail on the merits, it would be possible to fashion appropriate remedies that would not place PECO in the unenviable position of choosing which court order to disobey. Although we believe that there is some merit to PECO's claim that allowing class actions to proceed in the face of consent decrees that cover similar areas may discourage employers from agreeing to consent decrees in the future, we do not believe that this alone justifies denying plaintiffs' motion in this case. As Chief Judge Seitz noted in another context, "class suits serve different ends than do public suits." *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 803 (3d Cir.), *cert. denied*, 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1974). Although we do not desire to discourage settlements of public suits, we do not believe that by entering into a consent decree an employer can forever immunize itself against subsequent class actions. We are consoled by the belief that if PECO has in fact lived up to its obligations under the earlier consent decree, it is likely that its actions that are questioned in this suit will be found not to violate Title VII. If, on the other hand, it is violating Title VII, there is little merit to a policy argument that would protect it from class actions.

*The Requirements of Rule 23(b)(2)*

In addition to meeting the prerequisites of Rule 23(a), plaintiffs must show that the action satisfies the requirements of one of the subdivisions of Rule 23(b). We agree with plaintiffs that this action qualifies under Rule 23(b)(2). *See Wetzel v. Liberty Mutual Insurance Co., supra.* Plaintiffs' claims of sex discrimination clearly come within the Rule 23(b)(2) requirement that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, . . ." Fed.R.Civ.P. 23(b)(2). The existence of the consent decree does not render final injunctive or corresponding declaratory relief to the class as a whole inappropriate.