**Zane MAGUIRE, on behalf of himself and all others similarly situated, Plaintiff,**

**v.**

**SANDY MAC, INC. d/b/a Sandy Mac Food Company, et al., Defendants.**

Civ. No. 90–2043(SSB).

United States District Court, D. New Jersey.

Aug. 15, 1991.

**446**

Philip Stephen Fuoco, Haddonfield, N.J., for plaintiff.

Mesirov, Gelman, Jaffe, Cramer & Jamieson by Mark Rosen, Cherry Hill, N.J., for defendants.

## OPINION

BROTMAN, District Judge.

Presently before the court is plaintiff's motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the reasons stated hereinafter, plaintiff's motion is denied in part and granted in part.

## I. FACTS AND PROCEDURE

On May 24, 1990, Quaker Valley Meats, Inc. ("Quaker Valley") filed a class action complaint in this court. Quaker Valley named as defendants Sandy Mac, Inc. ("Sandy Mac"), a meat wholesaler, and various Sandy Mac corporate officers. Quaker Valley's complaint asserted causes of action against defendants under the Lanham Act, 15 U.S.C. § 1125(a); the New Jersey Racketeering Act, N.J.S.A. 2C:41–4; the federal Racketeering Influenced Corrupt Organizations statute, 18 U.S.C. § 1964(c); the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–1 *et seq.;* and common law fraud.

Defendants have already pleaded guilty to criminal charges arising out of the conduct of which plaintiff complains. Essentially, defendants have admitted that Sandy Mac sold ham products that fraudulently represented that they met U.S.D.A. standards during a period from 1975 to 1987. Sandy Mac was a federally inspected meat plant which processed ham products for resale through distributors and wholesalers throughout the United States. It is no longer in business as its assets have been sold. Sandy Mac's hams failed to comply with U.S.D.A. standards because the amount of water added to the ham exceeded the amount represented on the label or permitted by law.

On September 10, 1990, Quaker Valley, pursuant to Fed.R.Civ.P. 41(a)(1), voluntarily dismissed its individual claim. Plaintiff Zane Maguire, a restaurant owner who purchased defendants' ham products during the relevant time period, replaced Quaker Valley as the proposed class representative. The proposed class consists of two subclasses: resellers who opened Sandy Mac's packaging and "ultimate consumers."

## II. DISCUSSION

The court has jurisdiction over this matter pursuant to 15 U.S.C. §§ 1121 and 1125 (the Lanham Act) and 18 U.S.C. §§ 1962 and 1964 (the Racketeer Influenced Corrupt Organizations Act). The court has pendent jurisdiction over the state statutory and common law claims.

As this court has noted on prior occasions, "class actions may not be approved lightly. The Supreme Court has recently emphasized that a class action 'may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Seiler v. E.F. Hutton,* 102 F.R.D. 880, 887 (D.N.J.1984) (citing *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)). Before turning to the requirements of Rule 23, the court notes that the burden of proving that a class is appropriate rests with the proponent of the class action. *Zlotnick v. Tie Communications, Inc.,* 123 F.R.D. 189, 190 (E.D.Pa.1988); *Gavron v. Blinder Robinson & Co.,* 115 F.R.D. 318, 321 (E.D.Pa. 1987); *Seiler,* 102 F.R.D. at 887 (citing 3B Moore's Federal Practice § 23.02–2 at 23–96 n. 35 (2d ed. 1984)).

■ Although the court may not look to the merits when determining whether to certify a class, *Seiler,* 102 F.R.D. at 889 n. 4 (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40

L.Ed.2d 732 (1974)), the court must look beyond the bald allegations in the complaint to determine whether plaintiff has satisfied the requirements of Rule 23. *Glictronix Corp. v. American Tel. & Tel., Co.*, 603 F.Supp. 552, 584 (D.N.J.1984) (citation omitted). Out of fairness to potential members of the class who may have their claims extinguished if the court certifies a class as to all claims in the second amended complaint only then to dismiss some of those claims, it is appropriate for the court to look at the allegations of the complaint only enough to determine whether the cause of action may survive a motion to dismiss. *In re Orfa Sec. Litig.*, 654 F.Supp. 1449, 1459 (D.N.J.1987). Thus, the court will consider the plaintiff's standing to sue under the Lanham Act simultaneously with the motion for class certification.

### A. *Consumers' Standing to Sue under the Lanham Act*

■ Plaintiff alleges that he and members of the class were damaged by defendants' misrepresentations. Plaintiff claims that defendants are liable under § 43(a) of the Lanham Act, as codified at 15 U.S.C. § 1125(a). In response, defendants contend that plaintiff, as a consumer, has no standing to sue under the Lanham Act. Defendants assert that the Lanham Act creates a right of action for competitors only, citing *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 720 F.Supp. 194 (D.D.C.1989).

Section 1125(a) provides that:

Any person who, on or in any connection with any goods ... or any container for goods, uses in commerce any ... false or misleading representation of fact, which—

. . . . .

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities ... of his or her goods

. . . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such an act. 15 U.S.C. § 1125(a)(2) (as amended, November 16, 1988; effective November 16, 1989).

The 1988 amendment to the act did not alter the substantive law relevant to the issue of consumer standing. *See* Thompson, *Consumer Standing under Section 43(a): More Legislative History, More Confusion*, 79 Trademark Reporter 341 (1989).

The federal circuits have split on the question of consumer standing under the Lanham Act, the leading cases being *Colligan v. Activities Club of N.Y.*, 442 F.2d 686 (2d Cir.), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971) (consumers had no standing under Lanham Act to bring a class action suit), and *Arnesen v. Raymond Lee Org., Inc.*, 333 F.Supp. 116 (C.D.Cal.1971) (class of plaintiff inventors had standing to sue defendant patent service under Lanham Act for false advertising). The Third Circuit has rejected *Colligan* as a restrictive reading of the Lanham Act. *Thorn v. Reliance Van Co., Inc.*, 736 F.2d 929, 932 (3d Cir.1984) (investor in corporation that was injured by conduct of competitor has standing to sue under Lanham Act). In *Thorn*, the Third Circuit stated that *Colligan's* interpretation of the Lanham Act was contrary to the plain meaning rule and suggested that the Act should be broadly construed as a remedial statute available to non-competitors. *Id.* at 932 n. 5. This comports with previous decisions interpreting the Lanham Act as providing the right to relief to a broad class of litigants injured by violations of the act. *L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.*, 214 F.2d 649, 651 (3d Cir.1954); *Ames Publishing Co. v. Walker–Davis Publications, Inc.*, 372 F.Supp. 1, 11 (E.D.Pa.1974). Accordingly, the court finds that § 43(a) means what it says and that consumers have the right to relief under the Lanham Act.

■ After deciding that "non-competitors" have the right to relief under the Lanham Act, the Third Circuit applied the Ninth Circuit's "reasonable interest" test to determine whether the plaintiff had standing to sue. *Thorn*, 736 F.2d at 933. "The 'dispositive question' as to a party's standing to maintain an action under section 43(a) turns on whether the party 'has a

reasonable interest to be protected against false advertising.' " *Id.* (quoting *Smith v. Montoro,* 648 F.2d 602, 608 (9th Cir.1981), quoting 1 R. Callman, *Unfair Competition Trademarks and Monopolies,* § 18.2(b) at 625 (3d ed. 1967)). The Third Circuit requires a party claiming under the Lanham Act to demonstrate a " 'reasonable interest' to be protected under the statute" to prevent frivolous Lanham Act claims from flooding the federal courts. *Thorn,* 736 F.2d at 933.

In the instant case, plaintiff is a "person who believes that he or she is damaged" by a violation of the Lanham Act as required by the act. Plaintiff and the proposed class, as consumers, have a reasonable interest in being protected from commercial misrepresentations. Even though defendant is no longer in business, plaintiff has alleged damage that continued for more than a decade and seeks redress. The court finds that plaintiff and the proposed class thus have standing to sue pursuant to § 43(a) of the Lanham Act as codified at 15 U.S.C. § 1125(a).

### B. *Class Certification*

Plaintiff proposes the following class definition:

1. All persons who purchased defendants' ham products and thereafter resold the ham in some altered condition which necessitated opening the packaging as supplied by defendants. This class would consist of all deli and restaurant owners such as plaintiff; and those large purchasers ... which sold the ham products over the counter.

2. All ultimate consumers of defendants' ham products who purchased the product (on a cost per pound basis) for home consumption; thereby eliminating restaurant or deli sandwich consumers who purchased the product for immediate consumption.

Plaintiff's Reply Brief in Support of Class Certification at 4.

Fed.R.Civ.P. 23(a) sets forth the following prerequisites to maintaining a class action:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(b) requires that a plaintiff must also meet certain requirements in order to maintain a class action. Since plaintiff seeks to maintain a class action pursuant to Rule 23(b)(3), plaintiff must show that common questions predominate over individual issues and that a class action is superior to alternative methods of adjudicating this matter. Fed.R.Civ.P. 23(b)(3). The court will address these requirements *seriatim.*

#### 1. Numerosity

■ Plaintiff alleges that the proposed class contains "more than 100 geographically dispersed members." Plaintiff's Amended Class Action Complaint at 12. Defendants do not contest this allegation. Other courts which have discussed the numerosity requirement for class certification have considered certification appropriate where the members of the proposed class were far less numerous. *E.g., Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.) (declining to decide to certify class on other grounds, but noting that "allegation of more than 90 geographically dispersed defendants met the numerosity requirement"), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985); *In re Orfa Sec. Litig.,* 654 F.Supp. 1449, 1464 (D.N.J.1987) (joinder of 1,593 potential class members impracticable). Thus the court concludes that plaintiff's proposed class has satisfied the numerosity requirement of Rule 23(a)(1).

#### 2. Common Questions of Law or Fact

■ Rule 23(a)(2) does not necessarily require that all questions of law and fact be common nor that common questions predominate. *Kuhn v. Philadelphia Elec.*

*Co.,* 80 F.R.D. 681, 684 (E.D.Pa.1978). The subsection requires only that there be common questions of law or fact. *Id.*

For the common law fraud claim, each member of the proposed class would have to address the common questions of defendants' misrepresentations and intent to cause reliance. *Nolan by Nolan v. Lee Ho,* 120 N.J. 465, 577 A.2d 143 (1990). The New Jersey Consumer Fraud Act requires each member of the proposed class to prove that defendants violated the statute. N.J.S.A. 56:8–19. The federal and state racketeering statutes require each member of the proposed class to show that defendants violated the statute. 18 U.S.C. § 1964(c); N.J.S.A. 2C:41–4(c). The Lanham Act requires each member to show defendants' misrepresentations in order to recover. 15 U.S.C. § 1125(a). These are all questions common to the proposed class that would have to be addressed in order to proceed with this action. Thus the court finds that there are common questions of fact as required by Rule 23(a)(2).

### 3. Typicality

Plaintiff alleges that his claims are typical of the proposed class. Plaintiff's Amended Class Action Complaint at 14. Defendants do not contest this allegation. The court assumes that plaintiff's claims are typical of the claims of the class in that the named plaintiff's recoveries depend on legal claims typical of the class.

### 4. Adequacy of Representation

■ Defendants assert that plaintiff's interests conflict with the interests of the proposed class. Defendants contend that the proposed subclass of ultimate consumers have a potential claim against the proposed subclass of retailers who sold defendants' products. To support this assertion, defendants point to a related action in this court, *Robert G. Carroll, III v. Sandy Mac, Inc., et al.,* Civil Action No. 90–2326 (D.N.J.1990), which has since been voluntarily dismissed. *Carroll* sought to certify a class of ultimate consumers as plaintiffs against Sandy Mac and all retail sellers of Sandy Mac ham products. Defendants' Memorandum of Law Opposing Class Certification, exhibit A, ¶¶ 10, 11. Defendants

thus contend that plaintiff, as a purchaser of defendants' ham products for resale to ultimate consumers, cannot adequately represent the interests of a subclass of ultimate consumers who might have a cause of action against him.

The Third Circuit employs a two-prong test to determine adequacy of representation: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Defendants do not question plaintiff's counsel's qualifications, experience, or ability.

As to the fraud and racketeering claims, plaintiff, as a restaurant owner and operator, might have been subject to like claims from his customers, who were also included in the previous class definition. However, plaintiff's most recently proposed class and included subclasses eliminate the possibility of an action between the subclasses similar to the *Carroll* action. Plaintiff's proposed subclasses include 1) resellers who open the factory packaging in order to resell, and 2) ultimate consumers who purchase for home consumption. Thus the customers of restaurant and deli owners are not included in the proposed class. Since these two subclasses theoretically did not interact in the sale and purchase of defendants' ham products, there is no potential liability between them. Both subclasses pursue the same goal and seek similar remedies. As to the Lanham Act claim, neither of the proposed subclasses have a pending or potential Lanham Act claim against the other.

Third Circuit cases dealing with adequacy of representation have granted class certification where there was a potential conflict of interest with respect to damages, *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir.1977), *rev'g* 62 F.R.D. 124, 139 (E.D.Pa.1973) (representation was adequate even though plaintiff current gas station lessees would seek different remedy compared to plaintiff former lessees),

and where there was a related action pending by the plaintiff class in the defendant's behalf, *Keyser v. Commonwealth Nat. Financial Corp.*, 120 F.R.D. 489 (M.D.Pa. 1988) (representation was adequate against defendant corporation even though plaintiff shareholders maintained a related action on behalf of the defendant). Class certification has been denied where members of a proposed class had an action pending against other members in the proposed class. *Plum Tree, Inc. v. Rouse Co.*, 58 F.R.D. 373, 377 (E.D.Pa.1972) (representation was inadequate where franchisee members of the proposed class had a related action also concerning restrictive leases pending against the franchisor class representative).

▓ In the instant matter, there is no action pending between members of the proposed class. A defendant cannot create a conflict of interest based upon the existence of claims that are not asserted by the plaintiffs in their complaint. *In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143, 151 (E.D.Pa.1979) (no conflict of interest found between plaintiff retailer and plaintiff consumers in class action antitrust suit against defendant paper manufacturers). Assuming, *arguendo*, that liability related to this matter existed between the parties, this would not necessarily preclude certification of the class. In *In re Fine Paper*, the defendant paper manufacturers argued that the retail paper merchants and ultimate consumers could not be represented by the same class. The *In re Fine Paper* court observed:

> That class members may be on different levels of the fine paper distribution process is irrelevant. If at some future point in this litigation, class representatives seek to ... charge independent merchant houses with participation in the fine paper price-fixing conspiracy ... certification of subclasses ... will equip the court to adequately deal with the situation.

*Id.* at 151.

Plaintiff's Amended Class Action Complaint proposes two subclasses which would enable the court to deal with poten-tial conflicts concerning damages. Considering the facts on record, and in light of the relevant case law, the court finds no reason to deny class certification for any of plaintiff's claims on the basis of inadequate representation.

5. Predominance of Common Questions

▓ Plaintiff's Amended Class Action Complaint alleges violations of the Lanham Act, state and federal racketeering laws, and the New Jersey Consumer Fraud Act. Plaintiff also alleges common law fraud. The Lanham Act requires only that a claimant "believes that he or she is ... damaged." 15 U.S.C. § 1125(a). However, a civil remedy under the federal racketeering statute requires that a claimant show an injury resulting from a violation of the statute, 18 U.S.C. § 1964(c); *Klapper v. Commonwealth Realty Trust*, 657 F.Supp. 948 (D.Del.), *stay granted appeal certified* 662 F.Supp. 235 (D.Del.1987), and that the claimant establish a causal connection between the injury and the violation. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1164 (3d Cir.1989). The New Jersey racketeering statute requires a similar showing of injury. N.J.S.A. 2C:41–4(c). The New Jersey Consumer Fraud Act requires that a claimant show "any ascertainable loss of moneys or property" resulting from a violation of the act. N.J.S.A. 56:8–19. A common law fraud claim requires a showing of material misrepresentation, intent to cause reliance, and actual detrimental reliance. *Nolan by Nolan v. Lee Ho*, 120 N.J. 465, 577 A.2d 143 (1990).

▓ In order to succeed on the racketeering claims, each member of the proposed class would have to show the unique circumstances surrounding his or her individual injury. *See Curley v. Cumberland Farms Dairy, Inc.*, 728 F.Supp. 1123, 1131 (D.N.J.1989) (denying class certification of federal racketeering statute claim because each member of class would have to show injury caused by defendants' conduct). Although plaintiff's allegations are sufficient to support an individual racketeering claim,

see *Vietnam Veterans of America, Inc. v. Guerdon Indus.*, 644 F.Supp. 951, 955 (D.Del.1986) (civil racketeering claim based on defendant's consumer fraud), in this proposed class action individual questions of injury and causation would predominate over common questions of defendants' racketeering violations.

■ As to the fraud claims, each member of the proposed class would have to show his or her individual reliance and injury or a violation of a statute and a resultant injury. *See Rosentstein v. CPC Int'l Inc.*, Civil Action No. 90–4970, 1991 WL 1783, 1991 U.S. Dist. Lexis 200 (E.D.Pa. January 8, 1991) (denying certification of class of consumers who alleged, *inter alia*, fraud and violation of the federal racketeering statute by defendant cooking oil manufacturer's misleading advertisements). Although the Third Circuit has accepted the "fraud on the market" theory, *Peil v. Speiser*, 806 F.2d 1154, 1161 n. 11 (3d Cir.1986), allowing the court to presume reliance in certain instances, this theory has generally been limited to the securities market where the courts can presume "a nearly perfect market in information." *Id.* at 1161 n. 10. The consumer market has been found to be a "non-perfect" market. *Rosentstein*, 1991 WL 1783, 1991 U.S. Dist. Lexis 200. Thus the common questions of fact raised by the fraud-related claims do not predominate over the individual questions of fact, especially with respect to the subclass of ultimate consumers, who would have to show individual misrepresentation, reliance, and injury in each unique situation where defendants' allegedly misrepresentative packaging might not have been present. The Lanham Act claim, however, does not require any showing of injury or reliance. Success on the Lanham Act claim depends substantially on establishing defendants' alleged violation of the Act.

■ The court finds that, as to the fraud and racketeering claims, individual questions of reliance and injury predominate over the common questions of defendants' conduct. As to the Lanham Act claim, however, common questions predominate since no showing of reliance or injury is required by the statute.

### 6. Superiority to Alternatives to a Class Action

■ Defendants contend that the proposed class is unmanageable because of the potential size of the class. Defendants suggest that the size of the class "would number into the millions." Defendants' Memorandum of Law Opposing Class Certification at 24. Defendants claim that there would be problems identifying and notifying all the members of the class, specifically the ultimate consumers.

The Third Circuit has outlined the interests to be considered when addressing the question of superiority:

> Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large and (6) of the defendant.

*In re Asbestos School Litig.*, 104 F.R.D. 422, 433 (E.D.Pa.1984) (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 760 (3d Cir.) (en banc), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974)). In the instant matter, judicial economy would be best served in consolidating the litigation concerning defendants' conduct. Since only the Lanham Act claim has common questions predominating over individual questions, common questions concerning defendants' conduct and injuries arising therefrom could be resolved together. Since the amount of damages recoverable by any of the members of the class is likely to be small, legal actions would likely not be economically feasible for individual parties. A class action would allow injured parties to have their day in court.

## III. CONCLUSION

For the foregoing reasons, the court denies plaintiff's motion for class certification with respect to the following claims: the federal Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1964(c); the New Jersey Racketeering statute, N.J.S.A. 2C:41–4(c); the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–1 *et seq.;* and the

**452**

common law fraud claim. The court grants plaintiff's motion for class certification with respect to the Lanham Act claim pursuant to 15 U.S.C. § 1125(a).